**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

DAHUA TECHNOLOGY USA, INC.,

    Plaintiff,

          v.

FENG ZHANG,

    Defendants.

Civil Action No.:  18-cv-11147

**MEMORANDUM OF LAW IN SUPPORT OF FENG ZHANG'S**
**MOTION FOR SUMMARY JUDGMENT**

In August 2017, Dahua presented Zhang with a severance agreement, which he rejected. He was presented with a revised agreement, which he and the company's Sole Director "happily signed."  The language in the contract is clear.  In exchange for Dahua's promise "to make monthly severance payments to you in the amount of $680,000 for sixteen (16) months", Mr. Zhang:  (1) relinquished any and all claims he had against the company; (2) relinquished all equity he held in the company; (3) accepted a 16-month non-compete in <u>both</u> the United States <u>and</u> China; (4) gave up other non-monetary rights, such as his free speech about the company and experiences working there; (5) waived his right to trial by jury; (6) accepted Virginia law to govern the agreement; (7) accepted a claw-back provision whereby he could need to repay his consideration in the event of breach; and (8) twice acknowledged in all caps and bold lettering both in the body of the agreement and above his signature line that had read the agreement in full, that he had a full and fair opportunity to consult with counsel to ask questions, and that he understood its terms.

Despite engaging in discovery on two continents, Dahua cannot present any evidence indicating that Mr. Zhang ever intended to or agreed to accept $680,000 total as they suggest in

their complaint, because there is <u>none</u>.  Rather, what the evidentiary record unambiguously reflects is that Zhang would not accept that amount in exchange for his release of claims and other restrictive covenants, because he was already entitled to that amount without any strings attached.

Even if they do muster some evidence, Dahua can never meet its burden of production – clear and convincing evidence. And, while they may now suffer from buyer's remorse, this Court should dismiss Dahua's effort to disturb that agreement and refuse compliance with its terms. Because Dahua cannot ever meet its heightened burden of production, Zhang respectfully requests that this Court <u>grant</u> his motion for summary judgment on Dahua's complaint in its entirety and on his counterclaim for breach of contract and order Dahua to pay Zhang in accordance with the terms the contract.

## I.    GOVERNING LAW

The parties have agreed that the contract in question "shall be deemed to be made under, and shall be construed solely in accordance with the laws of the Commonwealth of Virginia, without giving effect to any state or federal principles of conflicts of law."  *See* <u>Exhibit 1</u> to the Complaint ¶ 11.  Thus, by agreement of the parties Virginia law applies to this Court's review. *See Zaklit v. Global Linguist Solutions, LLC*, 2014 U.S. Dist. LEXIS 92623 at \*13 and 18 (E.D. Va. July 8, 2014), citing, *Senture, LLC v. Dietrich*, 575 F. Supp. 2d 724, 727 (E.D. Va. 2008) (acknowledging need to make choice of law decision in motion to dismiss and according full weight to choice of law clauses in contracts).

The following is undisputed: (1) the parties have agreed that the contract in question shall be construed solely in accordance with Virginia law, (2) Dahua wrote the agreement in question, and (3) Dahua chose Virginia law because that's where it wanted the agreement enforced, among "lots of [other] considerations."  SOF ¶ 17.

2

Dahua and its counsel believed strongly enough in Virginia's underline substantial relation to the contract that Virgina law was chosen by Dahua to govern the severance agreement. Dahua should be estopped from now arguing that substantial relation does not exist because estoppel bars a party from asserting a position directly inconsistent with its prior position in the Complaint, which states that the only alleged error is the contracted severance amount. *See, e.g., McLaughlin v. Gholson*, 210 Va. 498, 501 (1970) (A party may not "change his position to the prejudice of his adversaries in contravention of [a] stipulation freely entered into."); *see also Bay State Gas Co. v. Dep't of Pub. Utils.*, 459 Mass. 807, 818 (2011).

"As a rule, where the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy." *See Orchard Trailers, Inc. v. Sundowner Trailers, Inc.*, No. CV 07-11451-RWZ, 2009 WL 10693614, at *3 (D. Mass. Mar. 13, 2009) (Zobel, J.). Here, since no public policy is offended and the parties have expressed their intent, Virginia law must be applied. *Id*.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Pina v. Children's Place*, 740 F.3d 785, 795 (1st Cir. 2014) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

On a motion for summary judgment, "[a]ll facts in the record, as well as all reasonable inferences to be drawn therefrom, are drawn in favor of the nonmovant." *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). The nonmovant can avoid summary judgment only by providing properly supported evidence of disputed material facts. *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841-42 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or

denials of his pleading.'" *Id*. at 841 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, (1986)).

And, in the present case, to survive summary judgment, the nonmovant (Dahua) must show it can meet the heightened clear and convincing evidentiary standard. *Southern Bank & Trust Co.*, 2013 U.S. Dist. LEXIS 38476 at *14. "Reformation of a contract should only be allowed when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties and that there has been either a mutual mistake…" *Board of Trustees of University of Illinois v. Insurance Corp. of Ireland, Ltd.*, 969 F.2d 329, 332 (7th Cir. 1992) (emphasis added).

## III.   RELEVANT MATERIAL FACTS

On November 9, 2015, Mr. Zhang signed a three-year term employment offer to serve as the plaintiff's Chief Strategy Officer, Vice President and President of North American and Enterprise Sales, beginning on January 1, 2016. SOF ¶¶ 1, 5. That agreement called for Zhang to work for Zhejiang Dahua Technology Co. Ltd. but be paid his annual salary of $510,000 by its US Subsidiary, Dahua Technology USA Inc. SOF ¶¶ 3-4. Under the 2015 agreement, unless Zhang was terminated due to illegal conduct or company misconduct, he was entitled to the entirety of the three years' pay at $510,000 per year, without any requirement for a release of claims, confidentiality, or a promise to not compete if he was terminated from his role. SOF ¶ 6.

In 2016, Dahua USA only paid Zhang $193,165.34 of his guaranteed $510,000 annual salary. SOF ¶ 7. Zhang did not complain about not being paid the entirety of his salary during 2016, and eventually (in 2017) Dahua's parent company paid Zhang the remainder of the $510,000 salary owed to him for his work in 2016. SOF ¶ 8.

In August 2017, Dahua notified Zhang his role at the company would change, and the parties agreed to enter into a severance agreement. SOF ¶¶ 9-10. On August 28, 2017, Zhang

was offered a severance agreement which would pay him $680,000 total, and he rejected that agreement.  SOF ¶ 12.  Dahua subsequently offered Zhang a different severance agreement, under which he would be paid $680,000 per month for 16 months and Zhang accepted that agreement.  SOF ¶ 13.  Both parties happily signed the severance agreement.  SOF ¶ 14. That severance agreement calls for the Plaintiff "to make monthly severance payments to you in the amount of $680,000 for sixteen (16) months," and requires Defendant to, among other things relinquish substantial claims against the Company, agree not to compete with the company in both China and the US, and give up his equity in the Company.  Dkt. No. 1 ¶ 13; Dkt. No. 1-1, ¶ 1.  There is no allegation that Defendant failed to perform his obligations anywhere in the record.

On January 10, 2018, Dahua notified Zhang it wished to sever its relationship with him, and offered him a severance agreement under which he would be paid $910,000 total.  SOF ¶ 15. On January 11, 2018, Mr. Zhang expressed his understanding that he is entitled to "the agreed severance amount defined in the first term (paragraph)" of the agreement, and requested accelerated payment of same in accordance with the terms of the agreement.  SOF ¶ 16.  Dahua asked Zhang to rewrite the contract, and when he refused, it filed suit against him.  SOF ¶ 20.

## IV.    ARGUMENT

Dahua simply cannot produce any evidence which indicates Zhang intended or agreed to accept $680,000 total as consideration in the severance agreement. As a result, the Complaint must be dismissed in its entirety. F.R.C.P. 56(c).

### A.  Virginia law requires that this contract must be upheld.

A court reviewing a contract must first determine whether the contact is ambiguous.[1] Here, the operative contractual language at issue is clear and unambiguous:

---

[1]  Massachusetts law also requires this primary analysis.  *See Kimmel & Silverman, P.C. v. Porro*, 53 F. Supp. Ed 325, 336 (D. Mass. 2014).

> In consideration for your execution, non-revocation and compliance with this Agreement, the Company agrees to make **monthly** severance payments to you in the amount of $680,000 for sixteen (16) months following the offer termination Date…

*See* Dkt. No. 1, ¶ 13; Dkt. No. 1-1 ¶ 1 (emphasis added).

Virginia law dictates that "the parties' contract becomes the law of the case unless it is repugnant to some rule or law or public policy." *Rash v. Hilb, Rogal & Hamilton Co.,* 251 Va. 281, 286 (1996) (citing *Winn v. Aleda Const. Co.*, 227 Va. 304, 307, 315 (1984)). Further, the Court "must give effect to the intention of the parties <u>as expressed in the language of their contract</u>." *Rash*, 251 Va. at 287 (emphasis added) (citing *Foti v. Cook,* 220 Va. 800, 805 (1980)). Turning to the intention of the parties <u>as expressed in the language of the contract</u>, the word "monthly" unambiguously indicates that $680,000 will be paid to Mr. Zhang each month for sixteen (16) months. This is the intention of the parties as expressed in the language of the contract and clear and unambiguous. Dkt. No. 1-1 ¶ 1; Complaint, ¶¶ 11-15; *Rash*, 251 Va. at 287. And, even if the Court found that the operative clause is ambiguous, which it is not, in the event of an ambiguity in the written contract, the Supreme Court of Virginia has unambiguously and consistently held that any such ambiguity **must be construed against the drafter of the agreement** – here, the Plaintiff. *Doctors Co. v. Women's Healthcare Assocs.*, 285 Va. 566, 573 (2013); *Mahoney v. NationsBank of Virginia,* 249 Va. 216, 222 (1995). In addition, to the extent Plaintiff seeks to introduce parol evidence to tip the balance in its favor, such an action may **not** be countenanced by this Court. As Judge Robert Payne has noted recently,

> **The parol evidence rule "has nowhere been more strictly adhered to in its integrity than in Virginia.**" *Erlich v. Hendrick Constr. Co., Inc.*, 217 Va. 108, 225 S.E.2d 665, 668 (Va. 1976). The rule provides: "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Iron Constr. Co. v. Bank of Boston*, 205 Va. 841, 140 S.E.2d 629, 633 (Va. 1965). In effect, the rule recognizes that "where parties have reduced their contract to a writing which imposes a legal obligation in clear and explicit terms the writing shall be the sole memorial of that contract, and it is conclusively concluded that the

6

writing contains the whole contract, and is the sole evidence of the agreement." *Pulaski Bank Ex'r v. Harrell*, 203 Va. 227, 123 S.E.2d 382, 387 (Va. 1962).

(emphasis added) *See SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 784 F. Supp. 2d 585, 592 (E.D. Va. 2011).

Thus, the plain language of the contract must be interpreted with its plain meaning. The necessary result is the dismissal of Dahua's Complaint in its entirety and an entry of summary judgment on Zhang's breach of contract counterclaim.

### B.    Massachusetts law also requires that this contract be upheld.

Just like Virginia law, under Massachusetts law, reformation will not be granted unless the parties' mistake is <u>mutual</u>. *Berman v. Sandler*, 379 Mass. 506, 509-10 (1980). Like Virginia law, Massachusetts requires "clear and convincing evidence" to establish a mutual mistake. *Covich*, 8 Mass. App. Ct. at 747. It remains the case that Dahua drafted the agreement in question, and that the language in dispute is <u>unambiguous</u>: "…the Company agrees to make **<u>monthly</u>** severance payments to you in the amount of $680,000 for sixteen (16) months following the offer termination Date…" *See* Dkt. No. 1-1, ¶ 1 (emphasis added). Under Massachusetts law, a written instrument may be reformed or rescinded in equity on the grounds of mistake <u>only</u> when there is "full, clear, and decisive proof" of the mistake. *See Simches v. Simches*, 423 Mass. 683, 687-688 (1996) (citations omitted). It remains undisputed that Dahua set forth <u>no plausible facts</u> in its Complaint (which includes, as a matter of law, the exhibits attached to it expressing Zhang's clear understanding he is and always was entitled to the contracted amount) that the disputed language is a scrivener's error or that Mr. Zhang considered the language a mistake. *See,* Dkt. No. 8-1 at pp. 11-16.

Further, Dahua has ascertained no such facts during discovery. There is not one writing anywhere in the record confirming Dahua's allegation that Zhang agreed to accept $680,000. And, Dahua knew that it would have to pay Zhang more than the $680,000 "baseline"

compensation he was owed under the 2015 employment agreement.  SOF ¶ 18.  Despite trying to

get him to accept $680,000, after he rejected that, Dahua offered him $680,000 per month for 16

months, which he accepted.  Id.; SOF ¶ 13.

### C.  Dahua's scrivener's error argument must fail.

Dahua alleges a scrivener's error occurred which necessitates reforming and/or not

enforcing the duly executed agreement between the parties.  *See* Dkt. No. 1, ¶¶ 14, 15, 31, 32.

Under Virginia law, "the rule is well-settled that a court is not permitted to rewrite a document or

add terms not included by the parties."  *Westgate*, 270 Va. at 575; *Bentley Funding Froup, L.L.C.*

*v. SK&R Group, L.L.C.*, 269 Va. 315, 330 (2005) (courts cannot alter or add to the plain

language of a contract); *Jackson v. Fidelity & Deposit Co.*, 269 Va. 303, 310 (2005) (intent of a

testator determined from the plain language of the will, and court cannot add words to the will).

A court's role in "correcting" contractual is limited, and any judicial change to a contract

because of an alleged scrivener's error thus presents a "significant exception to a well-

established rule."  *See Williamsburg Condo. Ass'n*, 270 Va. at 575.  Thus, whether a scrivener's

error occurred as well as any change made as a result of that error must be construed **narrowly**

by the Court.  *Id*. (emphasis added).

In *Morgan v. Russrand Trinagle Assocs., Inc.*, 270 Va. 21, 26 (2005), where the entry of

a final order was deemed by a trial court to be a scrivener's error because it intended to grant a

party's motion instead of denying it, the Supreme Court of Virginia reversed the decision

because:

> Characterizing the signing of the order by the trial judge, and by counsel for both
> parties, as an "oversight" or "inadvertent error" is inconsistent with the
> affirmative acts of the trial court and counsel.  Not only were all signatories aware
> that they were signing an order disposing of the merits of the case consistent with
> the trial court's previous opinion letter, all signatories are charged with the
> knowledge that an order is entered when signed by the trial judge.

*See Morgan v. Russrand Trinagle*, 270 Va. at 26.

8

As Virginia law does not find "oversight" or "inadvertent error" and thereby excuse a judge and counsel for the parties from the consequences of signing a document, the parties to the case at bar must be held to the same standard, especially because both parties were aware that they were signing a settlement agreement (prepared by Dahua) to resolve all claims between them, and that the affirmative act of signing the document bound them to the mutual promises they were making and receiving.  Further, under Virginia law, "scrivener's errors are those which are 'demonstrably contradicted by all other documents," or are apparent on the face of the document itself.  *Williamsburg Condo. Ass'n*, 270 Va. at 575 (citing *Wellmore Coal Corp. v. Harman Mining Corp.*, 264 Va. 297, 283 (2002).

Scrivener's errors have been found in circumstances **unlike** the case at bar as follows:

(1) a typographical mistake made by a court reporter in transcribing a trial transcript, counsel's failure to prepare an order for entry by the trial court, and a misstatement on the record by the trial court regarding the length of incarceration a defendant was ordered to serve.  *See Westgate*, 270 Va. at 576 (citing *Zhou v. Zhou*, 38 Va. App. 126, 123 (2002) ("Scrivener's or similar errors in the record, which are demonstrably contradicted by all other documents, are clerical mistakes.");

(2) a default judgment order against a defendant which listed him as both the plaintiff and defendant, since a review of the order compels the reader to conclude which party was the plaintiff.  *See Westgate*, 270 Va. at 576 (citing *State Farm Mutual Auto. Ins. Co. v. Remley*, 270 Va. 209, 221 (2005)); and

(3) notice of a hearing which listed the incorrect weekday but contained the correct calendar date.  *See Westgate*, 270 Va. at 575 (citing *Dunton v. Tanigoshi*, 47 Cal. App. 231 (Cal. Ct. App. 1920)).

Here, there are no other documents outside of the severance agreement which could ever offer any demonstrable contradiction to the consideration contained in the executed severance agreement.  Dahua could argue that it has emails stating the company's intent to pay Zhang $680,000 total, but all of those emails predate his rejection of that offer, making them irrelevant.

Thus, the only relevant documents which shed any light into Zhang's intent outside of the executed severance agreement (Dkt. Nos. 1-4 and 1-6) document only that Zhang's stated understanding is as clear as the language in the contract itself – he made no mistake and is entitled to payment in accordance with the terms of the severance agreement. Specifically, Dkt. Nos. 1-4 and 1-6 clearly indicate Mr. Zhang's understanding that <u>he agreed to receive consideration in the amount of $680,000 per month for sixteen months under the settlement agreement</u>. Thus, Dahua can never satisfy the <u>narrowly construed</u> exception of declaring and correcting a scrivener's error in the case at bar. As such, plaintiff's scrivener's error argument must fail on its face.

This is especially true because where a scrivener's error is not apparent to an ordinary reader on the face of a contract, Virginia law prohibits courts from correcting that error by applying rules of contract interpretation. *See Tiger Fibers, LLC v. Aspen Specialty Insurance Co.*, 594 F. Supp. 2d 630 (E.D. Va. 2009); *Williamsburg Condo. Ass'n*, 270 Va. at 578. This is because, to be corrected by applying principles of contract interpretation, the scrivener's error must be apparent on the "face of the [contract]" and cannot be proved by extrinsic evidence. *Tiger Fibers*, 594 F. Supp. 2d at 642. In fact, "whether there is a scrivener's error must be decided based on the [contract] itself and not any parol evidence, particularly where…the [contract] disclaims any other agreements…" *Id*.

Here, the contract in question clearly disclaims any other agreements, except a contemporaneously signed offer letter (Dkt No. 1-3) the terms of which are not inconsistent:

> You acknowledge that this Agreement is a full and accurate embodiment of the understanding between you and the Company, and that it supersedes any prior agreements or understandings made by the parties including the Offer of Employment between you and Dahua dated November 5, 2015, which shall be terminated in all respects, but excluding the offer latter entered into by the parties of even date.
>
> *See* Dkt. No. 1-1, ¶ 10.

Thus, this Court must look to the plain language of the contract (Dkt. No. 1-1), and nothing more, to determine whether a scrivener's error is present. *See Williamsburg Condo. Ass'n*, 270 Va. at 578 (scrivener's error must be "easily understood with reference to the remainder of the [contract in question]").  The contract does not contain any language or facts indicating that any error occurred with respect to the consideration to be paid to Zhang for his global release of claims and the other promises he made (and kept) in consideration therefor. Dkt. No. 1-1, ¶¶ 2-7.  As set forth above, the clear language of the agreement states:

> In consideration for your execution, non-revocation and compliance with this Agreement, the Company agrees to make monthly severance payments to you in the amount of $680,000 for sixteen (16) months…

> Dkt. No. 1, ¶ 13; Dkt. No. 1-1, ¶ 1.

Critically, even assuming Dahua's intentions were not accurately conveyed in the severance agreement duly executed by the parties, **"the fact that a party's intent [here, the Plaintiff] was not fully reflected cannot be attributed to an error of the scrivener."** (emphasis added) *See Williamsburg Condo. Ass'n*, 270 Va. at 578.  **"<u>Instead, the error lies with the party's inattention to the detail before him.</u>"** (emphasis added) *Id*.  As a result, the plaintiff's scrivener's error argument must fail as a matter of law.

### D.  With no mutual mistake, Dahua's contract reformation argument must fail.

Even in the light most favorable to Dahua, it cannot establish any facts to support its claim for relief on a theory of mistake, necessitating dismissal of the Complaint.  F.R.C.P. 56. Where a party cites a mistake to support its request for contract reformation, any such mistake must be <u>mutual</u> to justify the request. *See White v. Potocska*, 589 F.Supp. 2d 631, 663 (E.D. Va. December 3, 2008).  Indeed, "[a]bsent fraud, mutual mistake, or duress, a person with the ability to understand a written document and who signs such document, is bound by his signature, whether or not he actually read the document." *Id*. at 649.  Dahua did not allege or reference

11

fraud or duress in its Complaint and is thus relegated to trying to establish a "mutual mistake," which it cannot.

Under Virginia law, "[i]n determining whether a mutual mistake of fact existed at the time of the agreement, the inquiry is…whether each party held the same mistaken belief with respect to a material fact at the time the agreement was executed.'" *See Southern Bank & Trust Co. v. Praestans One, LLC*, 2013 U.S. Dist. LEXIS 38476 at *14 (E.D. Va. March 19, 2013) (citing *Tiger Fibers*, 594 F. Supp. 2d at 643) (quoting *Ward v. Ward*, 387 S.E. 2d 460, 462, (Va. 1990)); *see also, Collins v. Dep't of Alcoholic Beverage Control*, 467 S.E.2d 279, 283 (Va. Ct. App. 1996) (the inquiry is "whether each party held the *same* mistaken belief with respect to a material fact *at the time* the agreement was executed.").

To justify contract reformation under a theory of mutual mistake, Virginia law requires a showing that **"<u>clear and convincing evidence</u> demonstrates that 'both parties [enter into a written agreement] mistakenly believing it reflects their antecedent bargain."** *Southern Bank & Trust Co.*, 2013 U.S. Dist. LEXIS 38476 at *14 (emphasis added); *see also Kuhn v. Visnic Homes, Inc.*, 2017 U.S. Dist. LEXIS 77470 at **18, 23-25 (E.D. Va. May 22, 2017). Here, the Plaintiff can never meet that heightened evidentiary burden, especially where Zhang testified as follows:

> She present me two agreements, if I remember: One is agreement severance, another one is advisors…In that room, Mr. Fu and [Haiyan Yue] together, they say, here's the agreement, can you take a look?...and I review the documentations, the severance agreement. First off, is 680, that's the total, but 680 is already guaranteed me in my 2015 contract with no condition at all. I don't like that, that's not treating me well…and also there's a list of the terms, I don't like at all. It's like you can't do this, you can't do that, and noncompete, you know, the 680 they put in there total, first is already guaranteed for me in my 2015 contracts, no condition, period. And in this new contract, they say you have to accept the 1, 2, 3, 4, 5, 6, 7, 8, in order to get that. Why?...I -- I -- my feeling by that time is that this is not treating people well, this is humiliation. You used my money against myself, which you already guaranteed to me. It doesn't work that way. I dislike it, I reject it. I say, Mr. Fu and Haiyan, you got me to think more. That's not what I talked with Mr. Fu and he promised in the morning meeting. And they

say they will work on it. I just walked out of the office…I just went back to my office. That's the first time they present me the contract.

SOF ¶ 12; Exhibit 3 at 142:3 – 144:6.

When asked at deposition, Mr. Fu, the only individual who discussed terms with Zhang, when he was asked to describe why he believes that Zhang agreed to $680,000 total, Mr. Fu testified as follows:

> …I believe that one should apply common sense in the negotiations, based on the agreement; that is, this offer is entirely based on the agreement, that is US$40,000-odd per month or, if it is to be paid as a one-off payment, then the total is US$680,000. So these are the terms that we have been discussing back and forth…

Exhibit 4 at 52:7-12.

Yet, it is undisputed that Zhang rejected the offer which contained a payment of only $680,000.  SOF ¶ 12.  This renders Mr. Fu's statement moot and self-serving, at best.

In *Southern Bank & Trust Co.*, a bank sued guarantors for payment of an outstanding debt. In response, the guarantors claimed that a mutual mistake was present, but the only evidence they offered to support the theory of mutual mistake was a self-serving answer to a sworn interrogatory.  *See Southern Bank & Trust Co.*, 2013 U.S. Dist. LEXIS 38476 at \*\*14-15. Other than the aforementioned self-serving statement, there was no evidence presented whatsoever that the mistake was mutual.  *See Id.*  This was found to be wholly insufficient evidence to satisfy the "clear and convincing evidence" standard for establishing a mutual mistake under Virginia law.  *See Id.*; *see also, Gibbs v. Price*, 207 Va. 448 (1966) (request for reformation of deed denied where no disinterested witnesses could support self-serving theory of mutual mistake).

Here, like *Southern Bank & Trust Co.*, Dahua can present a self-serving statement(s), and nothing more, to support its theory of mutual mistake.  No evidence can be presented or that Zhang shared in the alleged mistake.  *See Kuhn*, 2017 U.S. Dist. LEXIS 77470 at \*18 ("[Dahua]

13

must show by clear and convincing evidence that both parties, at the time they signed the Settlement Agreement, mistakenly believed when they executed the contract [that the total severance amount was agreed to be $680,000.00…]").

In fact, as set forth by the agreement's clear and plain language, Zhang:  (1) relinquished any and all claims he had against the company; (2) relinquished all equity he held in the company; (3) accepted a 16-month non-compete in both the United States and China; (4) gave up other non-monetary rights, such as his free speech about the company and experiences working there; (5) waived his right to trial by jury; (6) accepted Virginia law to govern the agreement; (7) accepted a claw-back provision whereby he could need to repay his consideration; and (8) twice acknowledged in all caps and bold lettering both in the body of the agreement and above his signature line that had read the agreement in full, that he had a full and fair opportunity to consult with counsel to ask questions, and that he understood its terms.  Dkt No. 1-1, ¶¶ 2-6, 8, 11.

In consideration for his litany of aforementioned promises, Dahua offered, and Zhang accepted, **monthly payments of $680,000 for sixteen (16) months**, or, if he chose, immediate payment of the entire amount then owed.  Dkt. No. 1-1, ¶ 1 ("Such payment can be accelerated upon your request" if he took responsibility for the tax consequences under 409A).

Zhang's undisputed intent in this regard is clearly set forth in Dkt. Nos. 1-4 and 1-6 (which Dahua attached to its Complaint) – communications between counsel for the parties prior to this litigation – where Zhang expresses his entitlement to the agreed upon sum as clearly set forth in the agreement.  *See Kuhn*, 2017 U.S. Dist. LEXIS 77470 at **23-25 (communications with counsel used by Virginia District Court to ascertain intent of parties and negate mutual mistake theory).

First, as set forth on page 3 of Dkt. No. 1-4, Zhang's position was that the company "needs to pay [him] the entire $10,880,000…"  In fact, on January 11, 2018, Zhang, by email to Yong Ying, VP, Human Resources, Dahua Technology, requested an accelerated payment of his severance monies in accordance with the terms of the agreement:

> Based on the agreement I signed with Dahua on August 28, 2017, I am now formally request [sic] the payment acceleration of the agreed severance amount defined in the first term.  Please let me know once you finish the execution.
>
> *See* SOF ¶ 16; Exhibit 7.

In so stating, Zhang unambiguously expressed his position that the "agreed severance amount" is that which is defined in the first term (paragraph) of the severance agreement; namely, "monthly severance payments to you in the amount of $680,000 for sixteen (16) months…"

Second, in Dkt. No. 1-6, Zhang's counsel further explained his understanding that no mistake had taken place:

> He remained silent [about not being timely paid under the severance agreement] because he did not want to jeopardize the potentially lucrative future that he believed he had with the Company. He also believed that the Company would do the right thing. It was not until he was notified that his employment was being terminated in January 2018 that he came to realize that the Company was not going to make right on its commitments, leading him to assert his rights and request the acceleration of payments [under the terms of the settlement agreement].

In fact, the record is clear that Zhang could and would not have accepted an agreement for a total of $680,000 because of his well-documented belief that $680,000 would have been less than that to which he was already entitled:

> Yet, by the Company's argument, Mr. Zhang agreed to accept less than what he was entitled to under his then-existing employment contract in exchange for his agreement to not just relinquish that contract, but also to accept these additional onerous restrictions on his conduct, as well as to waive all stock rights and any other legal claims he might have. This argument, for obvious reasons, has no merit.

15

Dkt. No. 1-6, p. 3; *see also*, SOF ¶ 12; <u>Exhibit 3</u> at 142:3 – 144:6.

Again, as the relevant communications and testimony in this matter <u>clearly and convincingly</u> indicate, Zhang believed he was entitled to $680,000 per month for sixteen months as consideration for the broad promises he made (and kept) in the severance agreement. *See Kuhn*, 2017 U.S. Dist. LEXIS 77470 at **23-25.

Thus, as the record clearly indicates, Zhang's position going into the settlement agreement is clear for all to see; namely, that no <u>mutual</u> mistake took place here.  This is an essential element of Dahua's claim which it cannot establish, necessitating a finding of summary judgment against Dahua's complaint in its entirety.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Yet, Dahua disingenuously asserts that the parties intended the severance amount to be $680,000 total, and that a mutual mistake was made.  As set forth above, Dahua's assertions in this regard are belied by the very documents it uses to support its allegations, the rest of the factual record, and common sense.

The best argument Dahua might be able to muster is that Zhang did not complain when Dahua underpaid him on severance installments between September 2017 through January 2018. However, as set forth above, there is a documented history of Dahua not paying what it owes on time, and Zhang waiting patiently for it to do so.  In 2016, Dahua USA only paid Zhang $193,165.34 of his guaranteed $510,000 annual salary.  SOF ¶ 7.  Zhang did not complain about not being paid the entirety of his salary during 2016, and eventually (in 2017) Dahua's parent company paid Zhang the remainder of the $510,000 salary owed to him for his work in 2016. SOF ¶ 8.  The same is true here.  That is, until January 10, 2018, when Dahua informed Zhang of

16

its intent to not pay what it owed under the executed severance agreement (and attempted to pay him $910,000 instead).  SOF ¶ 15. At that point, the very next day, knowing that Dahua would not honor its obligations, Zhang made a demand for payment.  SOF ¶ 16.[2]

Thus, we are left with nothing more than Dahua asking this Court to alter the severance agreement in question to incorporate terms that the it now wishes it had convinced Zhang not to reject.  Virginia law prohibits this as a matter of law.  *See Lewis v. Lewis*, 2016 Va. App. LEXIS 164 at **14-15 (Va. Ct. App. 2016) ("reformation for mutual mistake…does not allow a court to alter [a contract] by changing its terms to those that the court finds appropriate or that one of the parties wished it had obtained in negotiations.").

In this regard, nothing has changed since the parties came before this Court to argue Zhang's Rule 12 motion to dismiss.  At that time, the Court saw fit to give Dahua an opportunity to do discovery.  Having completed discovery, Dahua's position continues to be supported by nothing more than naked, self-serving assertions of a mutual mistake which can never meet the heightened clear and convincing evidentiary standard for establishing mutual mistake.  As a result, Dahua's request to invalidate and/or reform the settlement agreement must fail as a matter of law.

### E.  Plaintiff's covenant of good faith and fair dealing argument must fail.

As an initial matter, Dahua's claim for breach of the implied covenant of good faith and fair dealing (Count III) must be dismissed, as it fails to state a legally cognizable theory of potential liability.  Simply put, Virginia law requires the dismissal of Dahua's claim for breach

---

[2]  In desperation, Dahua has fruitlessly tried to establish that Zhang's counsel discovered the alleged error.  However, it is undisputed in the record that Zhang reached out to his first attorney on January 16, 2018 and hired that attorney on January 22, 2018. And, Zhang hired his current counsel on June 7, 2018.  Thus, it is clear that no "mistake" was "discovered" on Zhang's part.  Rather, he knew what he agreed to, and made a demand for it before consulting with counsel (on January 11, 2018) when Dahua declared its intention to not honor its obligations under the executed agreement.

of the implied covenant of good faith and fair dealing because "Virginia law does not recognize an independent cause of action for this claim." *Middle East Broad. Networks, Inc. v. MBI Global, LLC*, 2015 U.S. Dist. LEXIS 98484 at *12. On this basis alone, Count III of the Complaint must fail.

Further, while recognizing that an implied covenant of good faith and fair dealing does exist in every contract under Virginia law, this covenant "simply bars a party from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Id*. at *12-13 (quoting *DeVera v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 87840); *Eastern Shore Mkts., Inc. v. J.D. Assoc. Ltd. Pshp.*, 213 F.3d 175, 182 (4th Cir. 2000). To this point, plaintiff has alleged no facts in the Complaint which indicate or suggest Zhang has prevented it from performing its obligations under the contract in dispute, or any other contract between the parties. As a result, Count III of the Complaint must be dismissed.[3]

**F. Zhang is entitled to summary judgment on his breach of contract counterclaim.**

It is undisputed that Dahua has not paid Zhang the accelerated payment per his request on January 11, 2018. SOF ¶¶ 13, 15-16, 20.

Since all of Dahua's claims must fail, and it has refused to pay Zhang in accordance with the terms of the severance agreement, he is entitled to summary judgment on his breach of contract claim.

**V.    CONCLUSION**

Zhang respectfully requests that this Court grant his Motion for Summary Judgment and (1) <u>dismiss</u> plaintiff's entire complaint with prejudice and (2) <u>Order</u> plaintiff to pay Zhang per the terms of the valid and binding contract executed between the parties on August 28, 2017.

---

[3] The same result applies under Massachusetts law, since the covenant of good faith and fair dealing does not require a party to agree to rewrite a valid contract.

Respectfully submitted,

/s/ Benjamin Flam
Philip Gordon (BBO# 630989)
Benjamin Flam (BBO# 671853)
GORDON LAW GROUP, LLP
585 Boylston Street
Boston, MA 02116
617.536.1800
pgordon@gordonllp.com
Dated: May 9, 2019                      bflam@gordonllp.com

## Local Rule 7.1 Conference Certification

I hereby certify that I conferred with Defendant's counsel in an effort to resolve and/or narrow the issues discussed herein.

/s/ Benjamin Flam
Benjamin Flam

## Certificate of Service

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Benjamin Flam
Benjamin Flam