UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 18-11147-RWZ


DAHUA TECHNOLOGY USA, INC.

v.

FENG ZHANG


MEMORANDUM OF DECISION & ORDER

January 9, 2020


ZOBEL, S.D.J.

Plaintiff Dahua Technology USA, Inc. ("Dahua") sued its former employee,

defendant Feng (Frank) Zhang, seeking reformation of his severance agreement and a

declaration of unenforceability.  Both parties contend that no genuine issue of material

fact exists and have filed cross-motions for summary judgment.  Docket ## 37, 47.

I.    **Background**[1]

  Dahua, a video surveillance equipment manufacturer, is based in Irvine, California

but has an office in Massachusetts.  It is the U.S. subsidiary of a Chinese company,

Zhejiang Dahua Technology Co., Ltd. ("Zhejiang").

    *a.  Initial employment arrangement*

---

[1] The court takes these facts from the parties' submitted statements of facts (Docket ## 46, 60) and
deposition testimony.

On January 1, 2016, Zhang became Dahua's Chief Strategy Officer, Vice President, and President of North American and Enterprise Sales and began working out of Dahua's Boston-area office.  As set out in his November 9, 2015 Offer of Employment ("2015 employment agreement"), Zhang earned an annual salary of $510,000 and a one-time grant of 100,000 shares of Zhejiang's common stock.  The 2015 employment agreement guaranteed Zhang payment of his full base salary through a three-year term of employment, unless he was terminated for illegal or other misconduct.  It did not contain any release of claims, confidentiality, or non-competition clause.

### b.  2017 employment negotiations and severance agreement

In August 2017, Dahua informed Zhang that his role at the company would change.  The chairman and CEO of the company, Liquan Fu, flew to Massachusetts on August 27 to deliver the news to Zhang.  The next day, August 28, Fu and Zhang negotiated the terms of his transition.  They agreed that Zhang would relinquish his Chief Strategy Officer role but would stay on as a consultant for two years at an annual salary of $240,000.  The parties further agree that Fu promised to "take care of" the remainder of the compensation owed to Zhang under the 2015 employment agreement (approximately $680,000) and cash out Zhang's stock.  Though they dispute whether Zhang expected any additional severance, they agree that Zhang never asked for multiple millions of dollars.

As the negotiations progressed, Fu kept Dahua's in-house counsel, Haiyan Yue, fully informed.  Yue in turn consulted with outside counsel Cathryn Le Regulski to

prepare documents memorializing Zhang's transition.  At some point on August 28, Yue and Fu presented Zhang with draft separation and consulting agreements.  The separation agreement offered to pay Zhang $680,000 <u>total</u>, which aligned with the amount due under the 2015 employment agreement, and the consulting agreement categorized him as an at-will employee.  Zhang rejected these drafts.

Later that day, Fu and Yue presented Zhang with a new <u>severance</u> (rather than <u>separation</u>) agreement that provided payment of $680,000 <u>per month</u> for sixteen months, which could be accelerated upon his request.  The agreement also contained a general release of claims, a non-competition clause, and a confidentiality provision.  Fu and Yue also provided a new offer letter governing the consulting arrangement.  The severance agreement stated that it "shall be construed solely in accordance with the laws of the Commonwealth of Virginia," whereas the offer letter contained a Massachusetts choice of law provision.  Zhang and Fu signed both documents, the severance agreement ("2017 severance agreement") and the offer letter.

       *c.  Performance of 2017 severance agreement*

Dahua promptly initiated performance of both agreements, paying Zhang $62,500 per month ($42,500 per the severance agreement, calculated by dividing $680,000 over sixteen months, plus $20,000 per the offer letter, calculated by dividing $240,000 over twelve months) from September through December 2017.  Although the plain language of the 2017 severance agreement dictated payment of $680,000 <u>per month</u>, Zhang accepted this much lower amount without comment or complaint.

On January 10, 2018, Dahua informed Zhang it wished to terminate his employment and offered him $910,000 in severance in exchange for signing a separation agreement.  On January 11, Zhang asked Dahua to accelerate payment of the amount outstanding under the 2017 severance agreement.  Zhang subsequently retained an attorney to review the separation agreement.  On January 29, Zhang's attorney rejected the separation agreement and asserted that Dahua owed Zhang "over $11,000,000" under the 2017 severance agreement.  Docket # 49-18.

Dahua's counsel responded on February 5, asserting the company had made a scrivener's error in the 2017 severance agreement: instead of making a "monthly severance payment of $680,000 for 16 months" following his separation, Dahua had intended to pay Zhang $42,500 per month for sixteen months, for a total of $680,000. Docket # 49-19 (emphasis added).  Zhang maintains that there is no scrivener's error in the 2017 severance agreement and that the company owes him at least $11 million.

On May 31, 2018, Dahua filed the instant suit for a declaration of unenforceability and reformation of the 2017 severance agreement to correct the alleged scrivener's error.  The company also claims breach of the duty of good faith and fair dealing.  Zhang counterclaimed for breach of contract.  The court denied Zhang's motion to dismiss and the parties subsequently filed cross-motions for summary judgment, on which they were heard.

II.  **Legal Standard**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Ferguson v. Gen. Star Indem. Co., 582 F. Supp. 2d 91, 98 (D. Mass. 2008) (quoting Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)).  When confronting cross-motions for summary judgment, the court must "view each motion separately, drawing all inferences in favor of the nonmoving party." Fadili v. Deutsche Bank Nat'l Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014).

III.   **Applicable Law**

The parties disagree about which jurisdiction's law applies to the 2017 severance agreement.  The agreement itself selects Virginia law, a fact that Zhang contends should be dispositive.  Dahua, however, points to the absence of any connection by either party to Virginia, wherefore Massachusetts law should govern.

Sitting in diversity, the court applies the choice of law rules of Massachusetts. Levin v. Dalva Bros., Inc., 459 F.3d 68, 73 (1st Cir. 2006).  Massachusetts courts take a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." Bushkin Assocs., Inc. v.

Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985).  "Where the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy and as long as the designated State has some substantial relation to the contract."  Steranko v. Inforex, Inc. 362 N.E.2d 222, 228 (Mass. App. Ct. 1977) (citation omitted).  To assess a state's interest, courts consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil [sic], residence, nationality, place of incorporation, and place of business of the parties."  Bushkin, 473 N.E.2d at 669 (quoting Restatement (Second) of Conflict of Laws § 188(2) (1971)).

Whereas Virginia is not the answer to any of these inquiries, Massachusetts figures into each.  The 2017 severance agreement was signed, negotiated, and performed in Massachusetts.  Likewise, the subject matter of the 2017 severance agreement was the payment of severance to Zhang, which the company furnished via its payroll system to Zhang in Massachusetts.  Finally, though Zhejiang is based in China and Dahua is based in California, Dahua has a place of business in Massachusetts and Zhang consistently worked out of this Massachusetts office. Virginia bears no relation to either party nor to their contractual arguments, while Massachusetts was the place of employment and the venue of the parties' negotiations, as well as the execution and performance of the agreement in suit.  Therefore, the

stated choice of law in the 2017 severance agreement must yield to the law of
Massachusetts.

IV.   **Discussion**

Zhang argues that Dahua should be bound to the clear text of the severance
agreement under which the company agreed to pay him $680,000 <u>per month</u> for sixteen
months, and insists that the court cannot consider any parol evidence to probe the
existence of a scrivener's error or mistake.  Additionally, Zhang asserts that only a
mutual—not a unilateral—mistake can support reformation of a contract, and that
Dahua has not put forward any credible evidence suggesting a mutual mistake.

Dahua argues the inverse: that there is no genuine dispute of fact that a mutual
mistake occurred, and the severance agreement should therefore be reformed to reflect
the parties' true intent.  In the alternative, Dahua contends that, at the very least, the
company made a unilateral mistake, which likewise allows Dahua to avoid performance
of the flawed severance agreement.

Dahua is correct on the law: parol evidence is relevant to assessing an allegation
of mistake, and even a unilateral mistake can support avoidance of a contract.  <u>Greene
v. Ablon</u>, 794 F.3d 133, 147 (1st Cir. 2015) (under Massachusetts law, a contract may
be avoided based on unilateral mistake); <u>Polaroid Corp. v. Travelers Indem. Co.</u>, 610
N.E.2d 912, 917 (Mass. 1993) (under Massachusetts law, extrinsic evidence is
admissible to evaluate claim of mistake).  "Reformation is an appropriate remedy for an
agreement containing a mistake if the mistake is mutual or was made by one party

(unilateral) such that the other party knew or had reason to know of it." <u>Nissan</u>
<u>Automobiles of Marlborough, Inc. v. Glick</u>, 816 N.E.2d 161, 165 (Mass. App. Ct. 2004).
Reformation of a unilateral mistake must be supported by "full, clear and decisive proof."
<u>Polaroid</u>, 610 N.E.2d at 918.

  Dahua claims that Zhang knew or should have known that there was a mistake in
the 2017 severance agreement because he and Fu had agreed on the broad terms of
his severance: $240,000 per year for two years for the consulting role, a payout of his
stock, and a payout for the amount due under the 2015 employment agreement
($680,000 <u>total</u>).  Dahua's position is borne out in substantial testimonial and
documentary evidence.  In his deposition, Fu testified that Zhang agreed to the
$680,000 total figure, and that the discussion concerned whether the $680,000 sum
should be paid as a single payment or in monthly installments.  Yue and Le Regulski
likewise testified that Fu and Zhang had agreed on the $680,000 sum and that the
company never intended to offer more.  Indeed, contemporaneous e-mail
communications between Yue and Le Regulski corroborate this view: Zhang would
receive "the 16 months of his salary as severance [amounting to 680,000 total],
regardless of whether he provides consulting services, and then he will get a separate
consulting fee for his consulting services."  Docket # 49-10.

  On the other hand, Zhang argues no mistake occurred because he knowingly
accepted Dahua's offer of $680,000 per month for sixteen months.  Zhang focuses on
the undisputed fact that Zhang rejected Dahua's offer of $680,000 total in its initial draft

separation agreement.  According to Zhang, any conversations and emails that predate

this rejection are irrelevant.  While Dahua argues the rejection stemmed from the draft

consulting agreement's treatment of Zhang as an at-will employee, Zhang contends he

rejected these initial drafts because they did not fairly compensate him for the value he

provided to the company nor his acquiescence to the onerous release, confidentiality,

and non-competition provisions that Dahua insisted on.  In Zhang's view, therefore, he

expected Dahua to come back to the table with a better offer, and so he was pleased to

accept the $680,000 per month for sixteen months that Dahua offered in the next

iteration of the agreement.

It strains credulity to think that a company would increase a severance offer

sixteenfold above the amount fixed by an existing employment agreement.  Moreover,

Zhang's view is refuted by the evidence.  For example, after Zhang rejected the first

separation agreement, Yue emailed Le Regulski and reported that "1. Frank reviewed

the separation agreement and he doesn't like it," and "2. He [Frank] and the boss [Fu]

decided on the spot that [Frank] will remain an employee of the Company, and his new

title is senior corporate advisor."  Docket # 49-12.  Le Regulski confirmed her

understanding that Zhang "will sign an offer letter and release agreement (rather than

separation agreement since he [sic] employment will not actually be terminated)."  Id.

Thus, Zhang is left relying on his own testimony, and even that is equivocal at

best.  Though Zhang insists he rejected the initial draft separation agreement in part

because the 2015 employment agreement guaranteed him $680,000 with no

confidentiality, non-compete or release strings attached, it is not clear from his testimony that he communicated this view to Fu.  Indeed, Zhang is clear only about three salient points from the negotiations.  First, Fu told Zhang that "he's going to take care of the 2015 contract."  Docket # 63-3 at 129:13-14.  Second, when presented with the draft consulting agreement, Zhang's "only . . . comment" was to ask that the "at will" qualification be removed so that he would be guaranteed a two-year position with a $240,000 annual salary.  Id. at 143:12-18.  And finally, when presented with the draft separation agreement, Zhang "reject [sic] the contract. I told them I didn't like it, both Ms. Yue sitting there, Mr. Fu standing. I told her, I said sync up with Mr. Fu, see what he promised me. And they said they would work on it. I just walk out the door."  Id. at 160:15-19.  Accordingly, Zhang's testimony is consistent with Dahua's position.

It is abundantly clear that Dahua only ever intended to provide $680,000 total in severance to Zhang, and that the company changed the draft separation agreement into a severance agreement to reflect its acquiescence to Zhang's desire to stay on as an employee of the company while in a consulting capacity.  And irrespective of what thoughts animated Zhang's mind during the negotiations, he cannot point to any evidence that the company was on notice of his supposed expectation for additional compensation.  In these circumstances, Zhang likely knew, and at the very least had reason to know, that the company was making a mistake when it offered $680,000 per month rather than $680,000 total.  Given this fact, Zhang's failure to bring the mistake to plaintiff's attention, his continued acceptance of monthly payments from Dahua, with his

10

subsequent insistence that the company owed him over $11 million (ultimately forcing

Dahua's hand to file this lawsuit), constitute breach of his duty of good faith and fair

dealing with respect to the 2017 severance agreement.

## V.    Conclusion

Because there is no genuine dispute that a unilateral, if not mutual, mistake

permeated the 2017 severance agreement, and Zhang accordingly breached his duty of

good faith and fair dealing, Dahua's motion for summary judgment (Docket # 47) is

ALLOWED and Zhang's motion for summary judgment (Docket # 37) is DENIED.  The

2017 severance agreement shall be reformed to provide for a $680,000 total severance

payment, in sixteen monthly installments of $42,500.  The parties are directed to jointly

file a proposed judgment reflecting this reformation.


|  January 9, 2020  |  /s/ Rya W. Zobel  |
| DATE | RYA W. ZOBEL |
|  | SENIOR UNITED STATES DISTRICT JUDGE |