UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAHUA TECHNOLOGY USA, INC.,

      Plaintiff,

v.

FENG ZHANG,

      Defendant.

No. 18-cv-11147-IT

MEMORANDUM AND ORDER

May 26, 2021

TALWANI, D.J.

      Before the court is Defendant and Counterclaim Plaintiff Feng Zhang's Motion to Amend Counterclaim [#27]. Zhang seeks leave to amend his counterclaims to add a cause of action against Zhejiang Dahua Technology Co., Ltd. ("Zhejiang"), which is the parent company of the current Plaintiff and Counterclaim Defendant Dahua Technology USA, Inc. ("Dahua"). For the reasons set forth below, the court concludes that Zhang has failed to put forth any valid reason for amending his counterclaim to include a claim against Zhejiang where Zhang had the facts underlying his proposed claim against Zhejiang at the time he asserted his counterclaim against Dahua. Furthermore, the court concludes that leave to amend should not be granted since any claim for breach of contract against Zhejiang would be futile where the agreement at issue was only between Zhang and Dahua and Zhang has not adequately alleged a basis for the court to

disregard the presumption of corporate separateness between the two entities. Accordingly, Zhang's Motion to Amend Counterclaim [#27] is DENIED.

I. RELEVANT BACKGROUND TO THE MOTION FOR LEAVE TO AMEND

On November 9, 2015, Zhang signed an employment contract to serve as Zhejiang's Chief Strategy Officer, Vice President, and President of North American and Enterprise Sales. See Dahua Compl., Ex. 2 ("2015 Employment Agreement") [#1-2]. While the employment contract stated that it was with Zhejiang and was signed on behalf of Zhejiang, Zhang's salary was to be paid for by Zhejiang's American subsidiary, Dahua. Id. In the course of his employment in this position, Zhang reported to Liquan Fu, who was the Chairman and Chief Executive Officer of Zhejiang and also Dahua's Sole Director. See Zahua Opp'n, Ex. A 89:16–90:7 [#97-1].

In August 2017, Zhang entered into an agreement, signed by Mr. Fu on behalf of Dahua, with respect to the termination of the 2015 Employment Agreement. See Dahua Compl., Ex. 1 ("August 2017 Severance Agreement") [#1-1]. The August 2017 Severance Agreement superseded the 2015 Employment Agreement and provided Zhang with cash compensation in return for several conditions, including a general release, an agreement not to compete, and an agreement of confidentiality.

The August 2017 Severance Agreement was the product of negotiation between Liquan Fu—the then Chairman of Zhejiang and Sole Director of Dahua—and Zhang. Zhang Mot. Amend 3 [#96]. Liquan Fu was assisted in the negotiations by Haiyan Yue, an attorney for Zhejiang. Id. In addition to the 2017 Severance Agreement, Zhang also signed a new employment agreement with Dahua that governed his new role as Senior Corporate Advisor at Dahua. See Dahua Compl., Ex. 3 ("August 2017 Employment Agreement") [#1-3].

The amount of cash compensation provided in the August 2017 Severance Agreement is at the center of this dispute. Namely, the written agreement provided that Dahua would agree to make "monthly severance payments to [Zhang] in the amount of $680,000 for sixteen (16) months . . . ." August 2017 Severance Agreement [#1-1]. Dahua contends that this was a scrivener's error and that the agreement between the parties was for 16 monthly payments of $42,500, for a total of $680,000, a difference of roughly $10 million. Dahua Compl. ¶ 14 [#1].

In November 2017, Zhang was directed to go to China to meet with Liquan Fu (Sole Director of Dahua and Chairman of Zhejiang) and the CEO of Zhejiang, Ke Li, to discuss Zhang's role at Dahua. Zhang Mot. Amend 3 [#27]. Then, on January 10, 2018, Zhejiang and/or Dahua sought to terminate Zhang from his new role as Senior Corporate Advisor to Dahua and proposed a new severance agreement that would supersede the August 2017 Severance Agreement and provide Zhang with a $910,000 cash payment. See Zhejiang Opp'n, Ex. 2 ("January 2018 Proposed Severance Agreement") [#34-2]. The proposed severance agreement was delivered to Zhang by Ying Yong, Zhejiang's Vice President of Human Resources. Zhang Mot. Amend 3 [#27]. Zhang refused to sign the agreement and, on January 29, 2018, submitted, though counsel, a demand letter for the full amount Zhang contends is due under the August 2017 Severance Agreement (over $10 million). See Dahua Compl., Ex. 4 ("Demand Letter") [#1-4].

In response, Dahua filed this action, seeking, inter alia, reformation of the August 2017 Severance Agreement. See Dahua Compl. [#1]. Zhang counterclaimed and alleged that Dahua was in breach of that agreement. See Zhang Answer and Countercl. [#18]. In December 2018, the court extended the close of fact discovery to April 30, 2019. Elec. Order [#22].

On February 11, 2019, Plaintiff served an interrogatory on Dahua asking Dahua to describe the involvement of Mr. Li in negotiating the August 2017 severance agreement. See Dahua Opp'n, Ex. H [#34-8]. Dahua responded that Mr. Li was not involved in the negotiations. See Dahua Opp'n, Ex. I [#34-9]. Based on this representation, counsel for Zhang agreed not to take Mr. Li's deposition. See Dahua Opp'n, Ex. J [#34-10].

On March 4, 2019, Liquan Fu was deposed. See Dahua Opp'n, Ex. J [#34-10]. Immediately following the deposition, Zhang's counsel emailed Dahua to request a deposition of Mr. Li on the basis that Mr. Fu's testimony "detailed Mr. Li was in fact involved [in the August 2017 negotiation]." See id. Dahua's counsel expressed disagreement with this characterization of Mr. Fu's testimony and pointed to its interrogatory response stating that Mr. Li was not involved in the negotiation. Zhang Mot. Amend, Ex. C [#27-3].

At the end of March 2019, Zhang's counsel renewed his request to depose Mr. Li. Zhang Mot. Amend, Ex. D at 3 [#27-4]. Dahua's counsel once again stated that the interrogatory response and Mr. Fu's testimony established that Mr. Li could not provide relevant testimony. Id. at 1–2. Dahua also noted that, in any event, Mr. Li was employed by Zhejiang, not Dahua. Id. at 2. Accordingly, Dahua informed Zhang that, since Mr. Li was employed by a non-party, "the only way that his deposition could be taken is through service of process in China." Id.

On April 15, 2019, Zhang filed the pending motion requesting leave to amend the counterclaim to add Zhejiang as a Defendant. See Zhang Mot. Amend [#27]. Zhang explains that the motion was precipitated by Dahua's refusal to produce Mr. Li for a deposition, which "dr[ew] a fictional line between the subsidiary and the parent where none ha[d] been drawn

before." Id. at 1.[1]

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 15(a)(2), leave to amend shall be "freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)(2)). While the rule requires the court to liberally grant motions to amend, the rule is bounded in at least two important ways that are applicable here. First, leave to amend should not be granted where there has been "undue delay, bad faith or dilatory motive on the part of the movant." Id. Second, leave to amend is not warranted where it would be futile, which is to say where the proposed claim "would fail to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Crowl v. M. Chin Realty Trust, 607 F. Supp. 2d 245, 246 (D. Mass. 2009) (citing Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001)).

## III. DISCUSSION

Zhang's motion seeking leave to amend his counterclaim fails for at least two principal reasons. First, Zhang's request to add Zhejiang as a party to this action is untimely where Zhang provides an insufficient basis for not asserting the counterclaim against Zhejiang at the outset of this litigation. Second, Zhang's amendment is futile based upon the allegations in the proposed

---

[1] Shortly after Zhang filed the Motion to Amend [#27], fact discovery closed and the parties submitted cross-motions for summary judgment. See Zhang Mot. Summ. J. [#37]; Dahua Mot. Summ. J. [#47]. On January 9, 2020, the court granted Dahua's Motion for Summary Judgment [#47] and entered Judgment [#78] in favor of Dahua. Zhang timely appealed. See Notice of Appeal [#79]. On February 17, 2021, the First Circuit vacated the judgment and remanded the case for further proceedings. See Court of Appeals Judgment [#83]. Following reassignment to this session, the parties agreed that the Motion to Amend [#27] remained ripe for adjudication. See Joint Status Report [#95].

amended counterclaim since Zhejiang is not a party to the 2017 Employment Agreement. The court addresses these bases for denying Zhang the requested relief in turn.

A. Timeliness

Zhang's Motion for Leave to Amend [#27] was filed on April 15, 2019, approximately seven months after Zhang filed his Answer and Counterclaim [#17], and fifteen days before the close of discovery. Where, as here, "a considerable period of time has passed between the filing of the [claim] and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." Nikitine, 715 F.3d at 390 (quoting Hayes v. New Eng. Millwork Distribs., Inc., 602 F.2d 15, 19–20 (1st Cir. 1979)). Often, this burden is met where the movant can show "new allegations coming to light following discovery" or "previously unearthed evidence surfacing." See Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011).

Here, the basis for Zhejiang's liability on the breach of contract claim, as described by Zhang in the Proposed Amended Counterclaim [#27-1], turns on facts known to Zhang since the commencement of this proceeding, that is: that Zhejiang is Dahua's parent company, that the severance agreement at issue was signed by Liquan Fu (who, in addition to being Sole Director of Dahua, is also Chairman of Zhejiang), and that Zhejiang has not paid Zhang the amounts that Zhang contends he is owed under the terms of the severance agreement. See Proposed Am. Countercl. 5–6 [#27-1]. Although Zhang possessed all the information he cites in support of his proposed claim against Zhejiang at the time he filed the counterclaim against Dahua, Zhang waited until two weeks prior to the close of fact discovery to seek leave to amend the counterclaim. Although Rule 15 prescribes a liberal policy towards amendments of the pleadings, where, as here, undue delay may result from a late amendment that is not based on

new facts, courts in this circuit have refused to allow the late amendment. See Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (affirming denial of request to amend where four months elapsed since complaint was filed and plaintiff had been "well aware of the facts underlying his claim . . . before he filed suit"); Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 390 (1st Cir. 2013) (affirming denial of request to amend where request brought nearly a year after complaint filed and where there were no new allegations that had come to light in the interim).

In his moving papers, Zhang impliedly argues that amendment may be timely to add a claim against Zhejiang where Zhejiang is, Zhang asserts, Dahua's alter ego and Plaintiff only discovered that the two were separate entities (or were proceeding as separate entities) when Dahua refused to produce Mr. Li for a deposition. However, this argument is unpersuasive. As early as 2015, Zhang either knew or should have known that Dahua was a separate entity from its parent company as the 2015 employment agreement makes this distinction clear. See Complaint, Exhibit 2 [#1-2] (stating that Zhang would be employed by Zhejiang but paid by Dahua). Nor can Zhang plausibly contend that he was reasonably proceeding in this action under the presumption that Dahua was standing in for Zhejiang. For one, Dahua's Complaint [#1] and Zhang's Answer [#18] acknowledge that Dahua and Zhejiang are separate entities and specifically identify only Dahua as the party to this action. Moreover, throughout discovery, Dahua made plain that Dahua was the party to this action whereas Zhejiang was the party's parent company. See Dahua Opp'n, Ex. C [#34-3] (Dahua noting, in its initial disclosures, that some of the disclosed individuals worked for Dahua and others for Zhejiang); Dahua Opp'n, Exs. F and G [#34-6], [#34-7] (Dahua objecting to Zhang's definition of "Dahua and You" since it included non-party Zhejiang). Despite being on notice that Zhejiang was a non-party for as long

as these proceedings have been ongoing, Zhang only sought to add a claim against Zhejiang when Dahua refused to produce Mr. Li for a deposition. Whether Dahua's refusal to produce an employee of its parent company for a deposition was proper is a question that could have been resolved on a motion to compel; it does not present an independent basis for asserting a cause of action against the parent company on facts known to Zhang since the beginning of this case.

For these reasons, the court concludes that Zhang has put forth no valid reason for waiting until seven months after his counterclaim was filed to seek leave to amend the counterclaim to assert a cause of action against Zhejiang. On the other side of the scale, where the motion to amend was brought two weeks prior to the close of fact discovery, expert discovery is now underway, and trial is set to commence in four months, the court finds that Zhang's late addition of Zhejiang to this action will create an undue delay in these proceedings, constituting prejudice to the opposing party. Accordingly, leave to amend is improper under Fed. R. Civ. P. 15.

    B.  <u>Futility</u>

In addition to being untimely, Zhang's proposed claim against Zhejiang is futile. Zhang alleges that Zhejiang is liable for breach of contract because Dahua and Zhejiang have failed to pay Zhang the payments conceived of in the 2017 Severance Agreement. <u>See</u> Proposed Am. Countercl. ¶ 16 [#27-1]. However, Zhejiang is not a party to that agreement; instead, the agreement plainly sets forth that the parties are Zhang and Dahua, with Liquan Fu signing for Dahua as Dahua's Sole Director. <u>See</u> 2017 Severance Agreement [#1-1]. Likewise, the agreement is clear that Dahua, and not Zhejiang, was the party obligated to make Zhang the disputed payments. <u>Id.</u> ¶ 1 ("In consideration for your execution, non-revocation and compliance with this Agreement, the Company [defined in the previous line as Dahua] agrees to make

monthly severance payments to you in the amount of $680,000 for sixteen (16) months following the offer termination Date (the 'Severance Period')."

Zhang's contention that Zhejiang is nonetheless bound by the 2017 Settlement Agreement is based on the assertion that Zhejiang is liable for Dahua's promises to Zhang since Dahua is Zhejiang's alter ego or instrumentality. See Zhang Mot. Amend 5–7 [#96].[2] However, because Dahua and Zhejiang are separate corporate entities, they are entitled to "a presumption of corporate separateness," that may only be overcome with an "affirmative showing of compelling circumstances." Egan v. Tenet Health Care, 193 F. Supp. 3d 73, 82 (D. Mass. 2016) (citing Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 128 (1st Cir. 2006)). As a general matter, in Massachusetts, only two such circumstances call for piercing the corporate veil. First, "[a] veil may be pierced where the parent exercises 'some form of pervasive control' of the activities of the subsidiary 'and there is some fraudulent or injurious consequence of the

---

[2] Zhang also argues that Dahua "admits that the August 28, 2017 severance agreement was actually between Zhang and Zhejiang." Zhang Mot. Amend 5 [#27]. In support of this assertion, Zhang points to a proposed but unexecuted amendment to the 2017 Severance Agreement which was attached to Dahua's counsel's February 5, 2018 response to Zhang's Demand Letter. See Dahua Compl., Ex. 5 ("Response Letter") [#1-5]. Although the Response Letter refers to the 2017 Severance Agreement as being between Zhang and Dahua, the unexecuted amendment has a signature line by Dahua, and both reference the termination of his then-employment (which was with Dahua), the unexecuted amendment defines the term "the Company" as used throughout the letter (including with regard to the 2017 Severance Agreement) as Zhejiang, not Dahua. Based on this draft, Zhang argues that "the August 28, 2017 severance agreement was actually between Zhang and Zhejiang." Zhang Mot. Amend 5 [#27]. As an initial matter, in context, the draft amendment's reference to Zhejiang appears to be a typographical error. Furthermore, Zhang's argument that the severance agreement he signed was with Zhejiang is unpersuasive where even Zhang has, throughout this proceeding, asserted that Dahua, not Zhejiang, is the signatory to the agreement and is not now suggesting proceeding only as to Zhejiang.

intercorporate relationship.'" Scott v. NG U.S. 1, Inc., 450 Mass. 760, 767, 881 N.E.2d 1125, 1132 (2008) (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619, 233 N.E.2d 748, 752 (1968)). Alternatively, the veil may be pierced where "'there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.'" Id. (citing My Bread Baking, 353 Mass. at 619, 233 N.E.2d at 752).[3]

Here, the allegations in the proposed amended counterclaim, even accepted as true, fall well short of stating a claim for alter ego liability against Zhejiang.[4] The only allegations that speak to the relationship between the two companies are Zhang's assertions that Zhejiang is the parent company of Dahua, that Liquan Fu (the individual who signed the severance agreement on behalf of Dahua as its Sole Director) also serves as Chairman of Zhejiang, and that Zhang

---

[3] In considering whether one of these two situations are present, the Massachusetts Supreme Judicial Court has identified the following twelve factors that courts may look to as part of a "evaluative consideration" of whether corporate formalities should be set aside:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Scott v. NG U.S. 1, Inc., 450 Mass. 760, 768, 881 N.E.2d 1125, 1132 (2008) (citing Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555 n.19, 736 N.E.2d 373 (2000)).

[4] The Proposed Amended Counterclaim does not even assert that Zhejiang and Dahua are alter egos or instrumentalities of one another. This assertion only comes in the form of attorney argument in Zhang's Motion to Amend 5–7 [#27].

signed the severance agreement with Dahua in the presence of Zhejiang's in-house counsel. See Proposed Am. Countercl. ¶¶ 2–4 [#27-1]. None of these assertions, taken separately or together, would support the legal conclusion that Zhejiang and Dahua are not entitled to the presumption of corporate separateness provided by Massachusetts law. Accordingly, because the 2017 Severance Agreement is an agreement only between Zhang and Dahua and because Zhejiang and Dahua are separate corporate entities, Zhang's proposed amended counterclaim fails to state a claim against Zhejiang for breach of contract relating to the 2017 Severance Agreement.

IV.  CONCLUSION

For the reasons set forth above, Zhang's Motion to Amend Counterclaim [#27] is DENIED.

IT IS SO ORDERED.

Date: May 26, 2021                                                        /s/ Indira Talwani
                                                                          United States District Judge