## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DAHUA TECHNOLOGY USA, INC.

     Plaintiff,

     v.

FENG ZHANG,

     Defendant.

Civil Action No. 18-cv-11147-IT

(Leave to file supplemental brief granted
on November 3, 2022)

## SUPPLEMENTAL BRIEF OF DAHUA TECHNOLOGY USA, INC. REGARDING THE COURT'S QUESTION AS TO ITS EQUITABLE POWERS IN THIS CASE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    BACKGROUND ................................................................................................................2

II.   ARGUMENT .....................................................................................................................4

    A.   The Court's Findings of Fact Indicate That No Contract was Formed and
        Therefore Equitable Relief is Required for a Just Outcome. ...................................4

        1.   A Mistake as to a Material Term Means No Meeting of the Minds. ...........4

        2.   Equity Supports Implying a Quasi-Contract To Avoid Unjust
            Enrichment. ..................................................................................................6

    B.   The Court has Broad Discretion to Fashion Equitable Relief that Will
        Prevent an Unjust Outcome. ....................................................................................8

        1.   Courts Have Inherent Flexibility Through Equity to Avoid Unjust
            Results...........................................................................................................9

        2.   Precluding Unintended Windfalls is the Essence of Equity. ......................9

            a.   Under Principles of Unjust Enrichment, this Court Should
                Deny Zhang a Windfall...................................................................10

            b.   Alternatively, Under Equitable Principles, this Court Has
                Discretion to Craft an Appropriate Remedy. .................................12

III.  CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

## Cases

Adelson v. Hananel,
   641 F. Supp. 2d 65 (D. Mass. 2009) ................................................................ 4

Borden v. Paul Revere Life Ins. Co.,
   935 F.2d 370 (1st Cir. 1990) ................................................................ 12, 13

Boyd v. Jamaica Plain Co-op. Bank,
   7 Mass. App. Ct. 153 (1979) ................................................................ 12

Brown v. Plata,
   563 U.S. 493 (2011) ................................................................ 13

Corcoran Mgmt. Co. v. Town of Framingham,
   No. 021836, 2003 WL 21960676 (Mass. Super., July 3, 2003) ................................................................ 12

Demoulas v. Demoulas,
   428 Mass. 555 (1998) ................................................................ 9

Durbeck v. Suffolk Univ.,
   547 F. Supp. 3d 133 (D. Mass. 2021) ................................................................ 11

Enos v. Union Stone, Inc.,
   732 F.3d 45 (1st Cir. 2013) ................................................................ 5

Fay, Spofford & Thorndike, Inc. v. Mass. Port Auth.,
   7 Mass. App. Ct. 336 (1979) ................................................................ 6, 7

Fernandes v. Havkin,
   731 F. Supp. 2d 103 (D. Mass. 2010) ................................................................ 11

Gen. Builders Supply Co. v. Arlington Co-op. Bank,
   359 Mass. 691 (1971) ................................................................ 12

Holmberg v. Armbrecht,
   327 U.S. 392 (1946) ................................................................ 9

Houlahan v. Raptor Trading Sys. Inc.,
   No. 16 Civ. 9620 (PGG), 2020 WL 2836255 (S.D.N.Y. May 30, 2020) ................................................................ 5

Howe v. Gov't Leasing Co.,
   No. 16-cv-01986-RM-STV, 2018 WL 1952582 (D. Colo. Feb. 26, 2018) ................................................................ 5

In re Pharm. Indus. Average Wholesale Price Litig. v. Abbott Labs.,
   339 F. Supp. 2d 165 (D. Mass. 2004) ................................................................ 12

Kansas v. Nebraska,
   574 U.S. 445 (2015)............................................................................................. 13

Keumurian v. Equifax Info. Servs., LLC,
   No. 15-CV-10481-ADB, 2016 WL 6405796 (D. Mass. Oct. 27, 2016)...................... 4

Mass Cash Reg., Inc. v. Comtrex Sys. Corp.,
   901 F. Supp. 404 (D. Mass. 1995) ............................................................................ 6

Metro. Life Ins. Co. v. Cotter,
   464 Mass. 623 (2013) ............................................................................................ 11

Murphy v. Mitchell,
   254 Mass. 18 (1925) ................................................................................................ 5

North Shore Bank v. Ludwig,
   No. 326502 (KCL), 2008 WL 2391097 (Mass. Land Ct. June 12, 2008) ......... 10, 11

PHL Variable Ins. Co. v. P. Bowie 2008 Irrevocable Tr.,
   718 F.3d 1 (1st Cir. 2013).......................................................................................... 9

Progressive Consumers Fed. Credit Union v. United States,
   79 F.3d, 1228 (1st Cir. 1996) ................................................................................. 12

Reggio v. Warren,
   207 Mass. 525 (1911) ....................................................................................... 10, 14

Rosario-Torres v. Hernandez-Colon,
   889 F.2d 314 (1st Cir. 1989).................................................................................... 13

Salamon v. Terra,
   394 Mass. 857 (1985) ............................................................................................... 6

Srivastava v. Danaher Controls,
   No. Civ.A. 02-4932, 2005 WL 1241972 (D.N.J. May 24, 2005) ............................. 5

White v. Fessenden Sch.,
   358 Fed. App'x 208 (1st Cir. 2009)........................................................................... 4

White v. White,
   346 Mass. 76 (1963) .............................................................................................. 10

**Other Authorities**

Restatement (First) of Restitution § 59 (1937) ............................................................. 12

Plaintiff Dahua Technology, USA, Inc. ("Plaintiff" or "Dahua") hereby submits its Supplemental Brief pursuant to leave granted by the Court on November 3, 2022 [Dkt. No. 195]. The question presented by the Court, set forth in its *Findings of Fact and Conclusions of Law*, entered October 21, 2022 [Dkt. No. 194 at 31-32][1], is as follows:

> Having found that there was no oral agreement in 2017 prior to the signed documents, that the parties were mutually mistaken as to the severance term in the Release Agreement,[2] but that Dahua's defense fails because Dahua bore the risk of such mistake, does the court have authority to fashion an appropriate remedy as a matter of equity or must the court enforce the agreement as written as a matter of law?

Dkt. No. 194 at 31-32 (footnote in original as footnote 15).

As set forth below, not only does the Court have authority to fashion an appropriate remedy as a matter of equity, but it has the duty to fashion such relief in order to avoid the inequitable outcome that would result from unjustly enriching Defendant Feng Zhang ("Defendant" or "Zhang") with the benefit of an unintended $10 million windfall.  Based on the Court's findings to date, the mutual mistake of the parties as to the material severance term in the Release Agreement means that there could not have been a meeting of the minds in 2017, and the Release Agreement and integrated 2017 Employment Agreement are invalid prior to reaching the question of allocation of risk.  The Court should therefore imply a quasi-contract under the same general terms but fixing the severance term to comport with fairness and the parties' original expectations.

---

[1] Capitalized terms not defined herein are ascribed the meanings given to them in the Court's *Findings of Fact and Conclusions of Law*.

[2] Or at a minimum, if Zhang was not mistaken that he knew or should have known that Dahua did not intend for the Release Agreement to provide severance in the amount of $680,000 per month for sixteen months.

In the alternative, if the Court finds that the Release Agreement remains enforceable notwithstanding the lack of meeting of the minds as to the severance term, it should exercise its broad, inherent equitable powers to flexibly create a solution that serves justice.  Under no circumstances should the Court be persuaded that it must enforce the Release Agreement as written, when doing so would contradict its own findings of fact regarding the parties' intentions and unjustly enrich Zhang for his efforts to take advantage of the parties' mistake.  Dahua therefore respectfully requests that the Court fashion an equitable remedy that permits Zhang to retain the money that Dahua has already paid to him without any further payments from Dahua.

I.     **BACKGROUND**

This action arises from a mistake wherein a written agreement wrongly stated that instead of having severance payments totaling $680,000 paid out over a 16 month period, the severance payments were to be in the amount of $680,000 per month paid out for 16 months.

Following an eleven-day bench trial and post-trial briefings and argument, the Court found, with respect to Dahua's defenses against Zhang's counterclaims: 1) "Dahua has established that it made a mistake when setting forth the severance payment as $680,000 per month for sixteen months rather than $680,000 payable over sixteen months;" and (2) "Dahua has also established that the mistake was mutual or that Zhang had reason to know of the mistake."  Dkt. No. 194 at 27.  The Court separately found that Dahua bore the risk of mistake in the Release Agreement, rendering rescission via mutual mistake unavailable as a remedy at law. Id. at 30-31.

With respect to Dahua's mistake, the Court noted that Dahua's original set of draft agreements included no payment at all for Zhang's separation (offering him only the opportunity to consult).  Id. at 27.  Subsequent drafts offered payment only under the integrated consulting agreement and severance payments for the balance of the pre-existing 2015 Employment

Agreement.  Id.  E-mail correspondence between Dahua's attorneys confirms that they believed

Zhang would receive the 16 months of his outstanding salary as severance.  Id.  "The

discrepancy between $10,880,000 (the amount in the agreement) and the initial zero dollar offer,

with no discussion of intermediate offers, supports Dahua's claim of mistake."  Id.

   As to Zhang's mistake, the Court found that "the sticking point in the negotiations

between the parties was not the amount of severance pay but the termination of Zhang's

employment."  Id. (emphasis added).  "While Zhang could have anticipated that Dahua would

sweeten its offer slightly to resolve the negotiations, Zhang had no reason to think Dahua would

increase the severance from zero to $10,880,000."  Id. at 27-28.  The Court determined that

although the evidence supports Zhang's claim that keeping him quiet for a brief time was a

benefit for Zhejiang or Dahua, "it does not support the notion that Zhejiang and Dahua…would

have offered the large sum, rather than a much smaller amount, to buy Zhang's silence and

cooperation."  Id. at 28.  The Court further dismissed Zhang's claim that he would not have

accepted the deal for $680,000 because it amounted to less than he was previously entitled to,

observing that the consulting agreement would have offered Zhang an additional two years of job

security and nearly half a million dollars in extra compensation that he would not have been

entitled to under the 2015 Employment Agreement.  Id.  Finally, the Court found that even if

Zhang realized that the Release Agreement contained the $680,000 per month figure, he had

reason to know it was a  mistake:  "While his silence and cooperation may well have been of

significant value to Zhejiang, Zhang had reason to know, from his own prior experience dealing

with Fu and Zhejiang, that the company would not jump to such a large number without first

trying to buy his silence and cooperation for some lesser amount."  Id. at 28-29.

Over the months following the execution of the 2017 agreements, Dahua did not pay $680,000 per month to Zhang, but continued to pay him the same amount that had been paid under the 2015 Employment Agreement, at the rate of $510,000 per year.  Id. at 18.  Dahua additionally began paying Zhang $20,000 per month pursuant to the 2017 Employment Agreement.  Id.  The parties agree that from the execution of the 2017 Employment Agreement, Dahua has paid Zhang $680,000 in severance in connection with the Release Agreement and $480,000 in salary promised in the 2017 Employment Agreement.  Id. at 20.  Had Dahua simply paid out the remainder of the 2015 Employment Agreement with no changes in 2017, Zhang would have only collected $680,000 through the end of the contract term.

## II.   ARGUMENT

### A.   The Court's Findings of Fact Indicate That No Contract was Formed and Therefore Equitable Relief is Required for a Just Outcome.

#### 1.   A Mistake as to a Material Term Means No Meeting of the Minds.

In finding a mutual mistake between the parties, the Court has made a determination that there was no meeting of the minds as to the severance term in 2017.  "[A] settlement agreement is binding as long as the parties have agreed on all *material* terms."  Keumurian v. Equifax Info. Servs., LLC, No. 15-CV-10481-ADB, 2016 WL 6405796, at *3 (D. Mass. Oct. 27, 2016) (emphasis in original) (citing White v. Fessenden Sch., 358 Fed. App'x 208, 210 (1st Cir. 2009) for proposition that an agreement is not enforceable unless the parties agree on all material terms) (other internal citations omitted).  "Failure of the parties to agree on the essential terms of a contract precludes the existence of an express contract."  Adelson v. Hananel, 641 F. Supp. 2d 65, 83 (D. Mass. 2009), aff'd 652 F.3d 75 (1st Cir. 2011) (internal citation and quotations omitted).

It is axiomatic that the severance amount is material in a severance agreement.  See, e.g., Houlahan v. Raptor Trading Sys. Inc., No. 16 Civ. 9620 (PGG), 2020 WL 2836255, at *9 (S.D.N.Y. May 30, 2020) (finding that severance agreement could not have been an "enforceable contract, because it did not contain the most essential term: the amount of Houlahan's severance"); Howe v. Gov't Leasing Co., No. 16-cv-01986-RM-STV, 2018 WL 1952582, at *3 (D. Colo. Feb. 26, 2018) (identifying amount of severance in agreement as material term); Srivastava v. Danaher Controls, No. Civ.A. 02-4932, 2005 WL 1241972, at *6 (D.N.J. May 24, 2005) (listing amount of severance payments as one of the material terms pertaining to an obligation to pay severance).  Where there has been no meeting of the minds as to the severance term, there has been no contract formed.  See Enos v. Union Stone, Inc., 732 F.3d 45, 48 (1st Cir. 2013) ("Under First Circuit law, as elsewhere, where there is no meeting of the minds between the parties because of a mistake of fact, no contract is formed.") (citing 13 S. Williston, Contracts § 1535 (1970)); Murphy v. Mitchell, 254 Mass. 18, 21 (1925) (despite existence of written agreement, parties who had different understandings of the facts never had a meeting of the minds and therefore did not enter into a binding contract).

Notably, determining which party bore the risk of mistake is not part of the analysis when considering if there was an initial meeting of the minds on all material terms sufficient to make an enforceable contract.  Indeed, Dahua found no case law that included risk of mistake as part of the analysis in determining whether or not there had been a meeting of the minds on the basis of a mistake of fact.

Because the parties did not agree on Zhang's severance value, there was no meeting of the minds and they never entered into an enforceable contract.  Whether or not Dahua bore the risk as to the factual mistake is outside the scope of determining if the parties entered into a

5

contract in the first place.  The written document that Zhang relies upon therefore cannot be enforced as-is against Dahua.

### 2.    Equity Supports Implying a Quasi-Contract To Avoid Unjust Enrichment.

Despite the non-existence of an express contract, Dahua paid—and Zhang accepted—amounts that both parties understood as severance, and the parties both purportedly performed under the closely related 2017 Employment Agreement.  "Where, as here, an unenforceable contract is found, Massachusetts courts permit quantum meruit recovery on the theory of unjust enrichment."  Mass Cash Reg., Inc. v. Comtrex Sys. Corp., 901 F. Supp. 404, 423 (D. Mass. 1995).  The idea of a quasi-contract (quantum meruit) operates as a means of providing an equitable recovery in the face of an extracontractual scenario "for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent…."  Salamon v. Terra, 394 Mass. 857, 859 (1985).  "[C]onsiderations of equity and morality play a large part … in constructing a quasi-contract…."  Id. (ellipses in original) (citing 1 A. Corbin, Contracts § 19 (1963)).  A quasi-contract may be implied when (i) the plaintiff [here, Zhang] has conferred a benefit upon the defendant [here, Dahua]; (ii) a reasonable person in the defendant's position would have expected to compensate the plaintiff for such benefit; and (iii) the plaintiff conferred the benefit with the reasonable expectation of being compensated.  Mass Cash Register, Inc., 901 F. Supp. at 423.  Generally, parties may invoke the remedy of quantum meruit, that is, asking recovery for the fair value of services and materials, in the absence of a contract.  See Fay, Spofford & Thorndike, Inc. v. Mass. Port Auth., 7 Mass. App. Ct. 336, 341 (1979).

Upon a finding that there was no express contract between the parties, this Court's previous findings support finding that a quasi-contract should be implied.  This Court previously found that Zhang [as Plaintiff] conferred the benefit of his "silence and cooperation" upon Dahua

6

[as Defendant]. Dkt. No. 194 at 28. This Court also recognized that Dahua would reasonably expect to compensate Zhang for these benefits. Id. at 29 (discussing the amount for which Zhejiang would try "to buy his silence and cooperation"). And indeed Dahua did provide such compensation in the form of $680,000 of severance (together with the additional benefit of the $480,000 provided through the 2017 Employment Agreement). Zhang conferred the benefit with a reasonable expectation of being compensated; however, as the Court has determined, Zhang could never have expected compensation anywhere near the level that he now claims. Id. at 28 ("Zhang had no reason to think that Dahua would increase the severance from zero to $10,880,000") and 28-29 ("Zhang had reason to know, from his own prior experience dealing with Fu and Zhejiang, that the company would not jump to such a large number without first trying to buy his silence and cooperation for some lesser amount"). Zhang's right to compensation must be limited to the fair value of the service provided. See Fay, Spofford & Thorndike, Inc., 7 Mass. App. Ct. at 341. As the actions of the parties show, along with the record of the range of values during negotiations, the parties always believed that Zhang's receipt of $680,000 in severance (and an additional $480,000 from the 2017 Employment Agreement) constituted fair value for the benefit that he conferred on Dahua.[3] Dkt. No. 194 at 27 ("[T]he sticking point in the negotiations between the parties was not the amount of severance pay but the termination of Zhang's employment.").

Unless the Court implies a quasi-contract, it will be required to perform the unenviable task of unwinding the benefits exchanged under the Release Agreement (and integrated 2017

---

[3] Even if the Court were inclined to determine that Zhang should have received more, it has recognized that any additional payment would be only "slightly" higher. Dkt. No. 194 at 27-28 ("Zhang could have anticipated that Dahua would sweeten its offer slightly to resolve the negotiations….").

Employment Agreement).  As with most equitable considerations, there is some elegance to the

concept of the quasi-contract: the dust has settled, money has been exchanged for services, and

the Court has now determined that the severance term was a mistake, leaving only the decision

of whether the $1,160,000 paid to Zhang since August 28, 2017[4] was fair under considerations of

equity and morality, or not.  If the answer is yes, as Dahua believes to be true, the case is

finished—the Court can imply a contract designed to avoid unjust enrichment by allowing Zhang

to keep every dollar paid to him, and the parties can walk away from this five-year long ordeal.

If the answer is no, the Court must make a finding as to what a reasonable amount should be to

avoid any unjust enrichment (on either side) and funds will changes hands either by

disgorgement or further payment.  Either way, in the face of an unenforceable contract, having

made substantial findings in this matter, the Court should imply terms to the parties' actions that

accord with justice and the reasonable expectations of the parties.  Those terms should mirror the

content of the Release Agreement and 2017 Employment Agreement, save for a fair and

appropriate corrected severance term.

### B.   The Court has Broad Discretion to Fashion Equitable Relief that Will Prevent an Unjust Outcome.

A court cannot be turned into a tool of inequity.  As discussed above, this court has

already found: "Dahua has established that it made a mistake when setting forth the severance

payment at $680,000 per month for sixteen months rather than $680,000 payable over sixteen

months," and "that the mistake was mutual or that Zhang had reason to know of the mistake."

---

[4] Importantly, this is not an all or nothing consideration.  If the Release Agreement (and integrated 2017 Employment Agreement) is unenforceable, then the 2015 Employment Agreement never terminated.  Under that agreement, Zhang would have been entitled to the remaining salary on this three year term: $680,000.  Dahua is not asking Zhang to disgorge that amount even upon a finding that the Release Agreement was unenforceable.

Dkt. No. 194 at 27; <u>see also</u> <u>id.</u> at 28 ("Zhang had no reason to think that Dahua would increase the severance from zero to $10,880,000[.]").

It would be plainly inequitable to award Zhang a windfall of over $10 million. This would reward Zhang for his wrongful actions: either attempting to take advantage of a mutual mistake, or duplicitous silence when signing a contract that he knew contained a monumental error. Instead, this Court may—and should—deny Zhang's breach of contract counterclaim based on one of Dahua's equitable defenses, or otherwise exercise its broad powers of equity to craft a like and just result.

### 1. Courts Have Inherent Flexibility Through Equity to Avoid Unjust Results.

This Court should use its substantial equitable powers to reach a just result. *See* Plaintiff's Answer to Amended Complaint, Document No. 19 (Sep. 20, 2018), Fourth Defense (unclean hands); Seventh Defense (unconscionability); Eighth Defense (unjust enrichment).

The Court has substantial discretion to act in equity. "Equity eschews mechanical rules; it depends on flexibility." <u>Holmberg v. Armbrecht</u>, 327 U.S. 392, 396 (1946). "Equitable remedies are flexible tools to be applied with the focus on fairness and justice." <u>Demoulas v. Demoulas</u>, 428 Mass. 555, 580-81 (1998) (citing 1 D. Dobbs, Remedies § 2.1(3), at 63 (2d ed. 1993)); <u>see also</u> <u>PHL Variable Ins. Co. v. P. Bowie 2008 Irrevocable Tr.</u>, 718 F.3d 1, 10 (1st Cir. 2013) ("The flexibility of equity is designed to avoid unjust results."). Here, it would be inequitable for Zhang to enrich himself through a scrivener's error, and the Court should use its flexibility and discretion to avoid this outcome.

### 2. Precluding Unintended Windfalls is the Essence of Equity.

The scrivener's error in this case is worth $10.2 million—fifteen times the actual intended offer. If enforced, this would be a staggering windfall to Zhang and a cataclysmic loss

to Dahua.  It is the very essence of equity to prevent such an unjust result; at a minimum, the
court should not abide by Zhang's request that it actively create an unjust result by bluntly
enforcing a purported written agreement that it has already determined has a material mistake of
fact.

> a.   **Under Principles of Unjust Enrichment, this Court Should
> Deny Zhang a Windfall.**

Here, the Court has found that Dahua caused the error, but also "that the mistake was
mutual or that Zhang had reason to know of the mistake."  Dkt. No. 194 at 27.  It is a
"fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the
expense of another by reason of an innocent mistake of law or of fact entertained by both
parties."  Reggio v. Warren, 207 Mass. 525, 534-35 (1911).  When "neither party intended [a]
result," and one party's contractual claim is "based upon the words mistakenly chosen," the court
will not allow "an attempt unjustly to enrich himself."  White v. White, 346 Mass. 76, 79 (1963).
In such cases, "the decree should be founded on the broad principle that equity acts to avoid
unjust enrichment."  Id.

Equity does not allow one party to take advantage of a mistake in a legal instrument.  The
Massachusetts Land Court has considered a mistake in a deed that would have prevented a
plaintiff mortgagee from having a valid priority over subsequent mortgages.  The defendant had
taken out other mortgages on the property even after learning of this mistake.  The court held:

> A scrivener's error, shown to have occurred by "full, clear and
> decisive" evidence, is still a scrivener's error even if it is
> attributable to an attorney or an attorney's employee.  To the extent
> that the equitable principle of "unclean hands" applies, it **applies
> against [defendant] to bar his attempt to take advantage of the
> mistake.**  He knew full well that a mistake had occurred when he
> made the conveyances to his mother and sister, took out new
> mortgages from [subsequent mortgagees/defendants], and
> deliberately chose to keep [plaintiff] in the dark.

North Shore Bank v. Ludwig, No. 326502 (KCL), 2008 WL 2391097, at *4 (Mass. Land Ct. June 12, 2008) (emphasis added).

Here, there was a scrivener's error, "attributable to [Dahua's] attorney," and Zhang has unceasingly litigated to try and benefit from that mistake. Equitable principles therefore "appl[y] against [Zhang] to bar his attempt to take advantage of the mistake." Id.

Dahua therefore asks this Court to find in its favor on its affirmative defense of unjust enrichment, and to deny Zhang the enrichment he seeks of $10.2 million beyond what Dahua ever intended to offer him—and beyond what he could ever have reasonably expected. This would be quintessential unjust enrichment: "retention of money or property of another against the fundamental principles of justice or equity and good conscience." Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (internal quotations and citations omitted). Unjust enrichment exists where (i) one party conferred a benefit upon the other party; (ii) the other party has appreciation or knowledge of the benefit; and (iii) retention of that benefit would be inequitable or unjust under the circumstances and in light of the parties' reasonable expectations. Durbeck v. Suffolk Univ., 547 F. Supp. 3d 133, 149 (D. Mass. 2021); Metro. Life Ins. Co. v. Cotter, 464 Mass. 623, 644 (2013) (noting that the unjust nature of the benefit is "a quality that turns on the reasonable expectations of the parties").

Here, the language of the contract confers a benefit upon Zhang that would be inequitable under the circumstances and in light of the parties' reasonable expectations. As this Court already found, Zhang never could have ever reasonably expected nearly $11 million in severance, so he cannot retain the benefit of the scrivener's error. Because unjust enrichment often involves a mistake, Dahua's role in the error does not preclude relief. See Metro. Life Ins. Co., 464 Mass. at 644.

11

For example, in Corcoran Mgmt. Co. v. Town of Framingham, the town had been

providing trash services to an apartment complex under the mistaken impression that it was

obligated to; it sought to recover the costs.  The court held that, even though the benefit was

conferred "by mistake due to its own carelessness," "unjust enrichment can occur in a situation

where the benefit sought to be recovered has been acquired by a mistake of fact or law."  No.

021836, 2003 WL 21960676, at *9 (Mass. Super., July 3, 2003) (citing Boyd v. Jamaica Plain

Co-op. Bank, 7 Mass. App. Ct. 153, 160 n.12 (1979)).  "'A person who has conferred a benefit

upon another by mistake is not precluded from maintaining an action for restitution by the fact

that the mistake was due to his lack of care.'"  Corcoran Mgmt. Co., 2003 WL 21960676, at *9

(quoting Restatement (First) of Restitution § 59 (1937)).[5]

### b.   Alternatively, Under Equitable Principles, this Court Has Discretion to Craft an Appropriate Remedy.

In the alternative, this Court should use its broad discretion to craft similar equitable

relief.  "[F]ashioning or withholding equitable relief, taking into account special circumstances

like a defendant's soiled hands, rests uniquely within the discretion of the trial court."  Borden v.

Paul Revere Life Ins. Co., 935 F.2d 370, 377 (1st Cir. 1990)  Where both parties bear some

---

[5] See also In re Pharm. Indus. Average Wholesale Price Litig. v. Abbott Labs., 339 F. Supp. 2d 165, 173 (D. Mass. 2004) ("The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law," among other factors); Progressive Consumers Fed. Credit Union v. United States, 79 F.3d, 1228, 1236 (1st Cir. 1996) ("Under Massachusetts law, the doctrine of unjust enrichment provides that 'where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position which the parties intended it to occupy, if the rights of the intervening lienholders have not been affected.'"); Gen. Builders Supply Co. v. Arlington Co-op. Bank, 359 Mass. 691, 695 (1971) ("where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected.").

responsibility—here, Zhang signed the agreement when he knew, or should have known, it contained a substantial mistake about its key term—the trial court is well-positioned "to bring the scales into balance[.]" Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 323 (1st Cir. 1989). Under such circumstances, "The broad discretion conferred on the trier liberates the *nisi prius* court from the dominion of absolutes, allowing it to weigh the equities, evaluate competing wrongs, and determine which party, if either, is more deserving of equitable relief." Borden, 935 F.2d at 377 (upholding district court's decision to rescind an insurance policy where the defendant issued the policy in reliance on a fraudulent representation by the plaintiff despite the plaintiff's argument that defendant's tortious behavior of surreptitiously swapping plaintiff to an inferior policy should preclude relief). This Court may craft equitable relief so that Zhang retains the severance he has already been paid but does not prevail on his claim for a further $10.2 million.

The Supreme Court demonstrated equity's flexibility in Kansas v. Nebraska, 574 U.S. 445 (2015). In that case, the Court modified a technical error in an agreement between two states using its "authority to devise 'fair and equitable solutions' to interstate water disputes." Id. at 472. The Court noted that "disgorgement need not be all or nothing" (id. at 465)—just as here, the Court may allow Zhang to retain the severance already received without awarding him a further $10.2 million. The Court reaffirmed that "flexibility [is] inherent in equitable remedies." Id. at 447 (quoting Brown v. Plata, 563 U.S. 493, 539 (2011)). It is appropriate to apply these same principles to this case.

## III.   CONCLUSION

For the reasons stated herein, Dahua respectfully requests that the Court (i) find that there was no meeting of the minds as to the material severance term of the Release Agreement such

13

that both it (and the integrated 2017 Employment Agreement) was never enforceable[6], (ii) using considerations of equity and morality, imply a quasi-contract among the parties with a total severance term owed of $680,000, and otherwise consistent with the Release Agreement and 2017 Employment Agreement[7], to prevent Zhang from taking advantage of the parties' mistaken $10,880,000 severance term, and (iii) grant such other and further equitable relief as is necessary to prevent unjust enrichment by Zhang.

In the alternative, if the Court finds that the Release Agreement remains enforceable despite the parties' lack of a meeting of the minds as to the material severance term, Dahua respectfully requests that the Court (i) find that allowing Zhang to take advantage of the mutual mistake in the 2017 Employment Agreement would be a gross miscarriage of justice and unjustly enrich Zhang to Dahua's detriment, (ii) conclude that this case "falls within the fundamental principle of equity that no one should be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties" (Reggio, 207 Mass. at 534-35), (iii) exercise the Court's inherent flexible equitable powers to act in equity to avoid Zhang's unjust enrichment by preventing him from collecting any further amounts from Dahua, and (iv) grant such other and further equitable relief as is necessary to prevent unjust enrichment by Zhang.

---

[6] Or, in the alternative if this Court finds that the two agreements are not integrated, to find that the Release Agreement is unenforceable.

[7] Or, in the alternative, to imply a severance term consistent with the Court's recognition that at all times the parties were negotiating a total severance term at or near $680,000. ("[T]he sticking point in the negotiations between the parties was not the amount of severance pay but the termination of Zhang's employment." [Dkt. No. 194 at 27]).

Respectfully submitted,

DAHUA TECHNOLOGY USA, INC.,

By its Attorneys,

Dated: December 6, 2022

/s/  Daniel E. Rosenfeld
Daniel E. Rosenfeld (BBO No. 560226)
drosenfeld@sullivanlaw.com
Erika L. Todd (BBO No. 689053)
etodd@sullivanlaw.com
Ryan M. Rosenblatt (BBO No. 698490)
rrosenblatt@sullivanlaw.com
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
(617) 338-2800

## CERTIFICATE OF SERVICE

I, Daniel E. Rosenfeld, certify that on December 6, 2022, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any indicated as non-registered participants.

/s/  Daniel E. Rosenfeld
Daniel E. Rosenfeld

15