UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAHUA TECHNOLOGY USA, INC.,

      Plaintiff and Counterclaim Defendant,

               v.

FENG ZHANG,

      Defendant and Counterclaim Plaintiff.

Civil Action No.:  18-cv-11147-IT

**ZHANG'S OPPOSITION TO DAHUA'S MOTION FOR THE COURT TO
SUPPLEMENT ITS CONCLUSIONS OF LAW**

Dahua opens its brief by raising a delinquent argument on ambiguity.  This argument fails.  <u>First</u>, it has been waived as a matter of law.  It appears nowhere in Dahua's complaint or affirmative defenses, and Dahua failed to raise it during trial or in any of the post-trial briefings or arguments.  <u>Second</u>, there is simply no ambiguity to the payment provision written in their contract.  The words are clear and have been treated as such since the date Dahua started this action to reform them.

Dahua's remaining argument regarding the Court's equitable powers similarly falls flat. <u>First</u>, the very case cited by Dahua, <u>Torrao v. Cox</u>, is inapplicable here, because that case considered "the decisive question" of "whether the plaintiff's attorney was acting as his agent, so as to bind the plaintiff…" to an agreement that differed from a proven prior agreement.  No such agency inquiry applies here, and there was no prior agreement.  Instead, we know quite the opposite, that the Chairman of Dahua (a) flew in from China to terminate Zhang, himself, (b) had no prior agreements with Zhang that would give Dahua the protections they desired, (c) had a

full panoply of lawyers draft and counsel him on the actual agreement that was signed, (d) concealed the dollar amounts from his legal team while they were drafting the provisions, (e) signed the agreement himself, (f) handed the agreement to Zhang for signature, (g) boasts that while he does not speak English, he would not have bothered to read the agreement even if he had directed his bilingual counsel to translate it, (h) had serious company-wide legal issues Dahua was concerned about, and (i) got the benefit of the substantial protections Dahua wanted, only filing suit after the announcements were made.  Dahua's case thus can never satisfy the Appeals Court's factors from Torrao.  Moreover, Dahua's proposition that Restatement (Second) of Contracts § 158 permits rewriting the contract is wrong.  Section 158 cannot apply here for a host of reasons, any one of which is dispositive and none of which Dahua addresses:  Dahua failed to prove any prior agreement whatsoever; Dahua bears the risk of the mistake; and Zhang's reliance cannot be unwound.

Second, Zhang performed his obligations under the contract.  He refrained from competition, disparagement and speaking out about the myriad of serious issues that concerned Dahua.  The relief Dahua seeks would thus result in an inequitable windfall to Dahua.

Third, Dahua came to this Court with unclean hands and acted with bad faith, rendering Dahua ineligible for equitable relief now, under Section 158 or elsewhere – a matter Dahua has failed to address for now the third time in its post-trial briefing.

In short, where, as here, there is no ambiguity present, this Court did exactly what was required:  applying the meeting of the minds analysis set forth in Greene v. Ablon – the seminal First Circuit case and another matter Dahua fails to address for the third time in its post-trial briefing – and then turning to the requisite legal analysis for mistake.  Having properly found that Dahua bears the risk of mistake for significant procedural and substantive reasons, Dahua is

not entitled to relief.  And <u>Torrao</u> changes nothing.

At bottom, Dahua's new arguments must fail.  Not only have they continued to ignore the Court's question about equitable powers in light of the Court's ruling that Dahua's defense to the contract fails because it bears the risk of mistake, the new arguments are untimely and substantively deficient.  The contract must be enforced as written, as a matter of law.

## I.  Dahua's ambiguity argument must fail.

Having failed to prove its case for either reformation or recission, Dahua now throws a hail mary, this time in the form of a new, baseless proposition – that the very plain and simple language in its payment provision is somehow ambiguous.  This argument misses the mark for both procedural and legal reasons.

### A.  Dahua's delinquent ambiguity argument, now raised for the first time after trial and after post-trial briefing, has been waived.

Dahua admits it failed to raise any argument about ambiguity until now.  <u>See</u> Dahua Memorandum at 4.  To be sure, Dahua is "not entitled to raise new and unadvertised theories of liability for the first time" after trial.[1]  <u>See</u> <u>Calvi v. Knox County</u>, 470 F.3d 422, 431 (1st Cir. 2006) (citing <u>Torres-Rios v. LPS Lab.</u>, 152 F.3d 11, 15-16 (1st. Cir. 1998)).  Dahua's mistake claims simply did not involve interpretation of the contract.  <u>See</u> Dkt. No. 194 at 22, n. 11 (quoting <u>OneBeacon Am Ins.</u>, 465F.3d at 41) ("Because a party seeking reformation of a contract 'is not asking the court to interpret the contract but rather to change it to conform to the parties' intent,' 'the usual restrictions on contract interpretation, such as the parol evidence rule,

---

[1]        Dahua declined to seek leave from this Court to file its present motion and memorandum in support thereof, an important matter as post-trial briefs were completed in January 2022, and the Court's post-Order briefing schedule (which was selected by the parties in accordance with the Court's Order) concluded on December 20, 2022.  <u>See</u> Dkt. No. 194 at 32. Dahua's papers should be rejected as a result.

do not apply to [the] court's inquiry.'")  Having failed to satisfy the *prima facie* elements for

both of its bites at the mistake apple, Dahua now asks this Court to go back to the beginning and

engage in an unnecessary contract interpretation exercise, by either adding a cause of action to its

Complaint or a new defense to its Counterclaim Answer.  Just as this Court may not rewrite the

terms of the severance contract, Dahua cannot be permitted to re-write its Complaint and

Counterclaim Answer at this stage.  See, e.g., Am. Med. Sys., Inc. v. Biolitec, Inc., 666

F.Supp.2d 216, 223-24 (D. Mass. 2019); Martinez v. Petrenko, 792 F.3d 173, 179-80 (1st. Cir.

2015) (rejecting request that district court allow change in legal theory when deadline to amend

complaint had passed and where all facts had been known, noting that "[s]uch a rule would

effectively require a litigant to engage in discovery based not on what was pleaded but also on

what might have been pleaded.").

     Dahua's failure to raise its ambiguity argument until now is fatal.

### B.  Nevertheless, the payment provision is crystal clear.  There is no ambiguity.

     The ambiguity argument also fails because there is none.  To demonstrate ambiguity,

Dahua must demonstrate that that the payment provision in question "is reasonably prone to

different interpretations."  See, e.g., Alison H. v. Byard, 153 F.3d 2, 6 (1st Cir. 1998).  "It is a

basic tenet of contract interpretation that 'where the language is unambiguous, "the contract must

be enforced according to its terms."'"  Pride Hundai, Inc. v. Chrysler Financial Co., 369 F.3d

603, 616 (1st Cir. 2004) (quoting Liberty Mut. Ins. Co. v. Gibbs, 773 F.2d 15, 17 (1st Cir. 1985).

The payment provision in the severance contract between Dahua and Zhang is not only

unambiguous, it is crystal clear:

> In consideration for your execution, non-revocation and compliance with this
> Agreement, the Company agrees to make monthly severance payments to you in
> the amount of $680,000 for sixteen (16) months following the offer termination
> Date (the "**Severance Period**")…

See Dkt No. 1-1 at 2 (bold in original).

Stated otherwise, Dahua promised to make "monthly severance payments to [Zhang] in the amount of $680,000." See id. Those monthly payments were to be made for the "**Severance Period**" of "sixteen (16) months." Id. (bold in original). The fact that the sixteen (16) months was to be the "Severance Period" was even bolded in the original. Id. There are no "different interpretations" here. See Alison H., 153 F.3d at 6. Hence, the reason Dahua instituted this suit in the first place, to reform the payment provision it considered quite clear.

Dahua now claims this constitutes language used in an "unusual" way. See Dahua Memorandum at 5. Yet, the words used by Dahua's panoply of lawyers could not be clearer. "[W]hen the language of a contract is clear, it alone determines the contract's meaning." See James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 669 (2018) (quoting Balles v. Babcock Power, Inc., 476 Mass. 565, 571 (2017)).

Turning, as Dahua does (Dahua Memorandum at 7), to the circumstances surrounding the contract's formation, if, *arguendo*, there was any ambiguity present, that ambiguity must be decided against Dahua, because "the circumstances surrounding [the language's] use" actually "indicate the intended meaning of language." See James B. Nutter & Co., 478 Mass. at 669 (quoting Merrimack Valley Nat'l Bank v. Baird, 372 Mass. 721, 724 (1977)). In other words, this provision was written by Dahua's lawyers to convey proposed severance terms. When juxtaposed with the rest of the contract, which is the necessary next step, the terms make perfect sense. Id. at 670 (to determine whether language is ambiguous, the Court must look to the "text of the contract as a whole").

Furthermore, even when faced with indefinite contracts, "[t]he court may not rewrite the language of a claim to make sense of it." See Am. Med. Sys., Inc. v. Biolitec, Inc., 666 F.Supp.2d

216, 223-24 (D. Mass. 2019) (citing <u>Helmsderfer v. Bobrick Washroom Equip, Inc</u>., 527 F.3d

1379, 1383 (Fed. Cir. 2008)); <u>Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am.</u>, 338 F. 3d 42,

50 (1st Cir. 2003); <u>Armstrong v. Rohm & Haas Co.</u>, 349 F. Supp. 2d 71, 80 (D. Mass. 2004).

In short, the payment provision here is crystal clear, and has always been considered so.

Dahua's ambiguity argument thus falls flat,[2] the contract may not be rewritten now.

## II.    Dahua's citation to the Restatement (Second) of Contracts is a dead end.

In his post-trial Reply brief, Zhang pointed out how the cases relied upon by Dahua

actually contradicted its argument. <u>See</u> Dkt. No. 199 at 3-6. Dahua's latest choice of authority,

<u>Torrao v. Cox</u>, does the same. Further, both Zhang's reliance on the deal and Dahua's unclean

hands preclude the equitable relief Dahua seeks.

### A.    The <u>Torrao</u> case cited by Dahua contradicts its argument.

In <u>Torrao v. Cox</u>, the Massachusetts Appeals Court considered the applicability of the

Restatement (Second) of Contracts Section 158 and whether it had the equitable power to grant

relief in equity. 26 Mass. App. Ct. 247, 250-51 (1988). <u>Torrao</u> featured a plaintiff who had

limited ability to speak, could not read in English, and was seeking to sell a parcel of real

property. <u>Id</u>. at 247. The plaintiff's attorney attended a closing, where the attorney deviated

from the prior agreement between plaintiff and defendant and committed the plaintiff to

conveying more land than the plaintiff intended. <u>Id</u>. at 249. Plaintiff did not attend the closing,

and his attorney acted without authority to modify the deal. <u>Id</u>. at 252. The Appeals Court held

---

[2]        Dahua's subsequent citation to Restatement (Second) of Contracts § 155 is
equally unavailing – as that section applies "where it might appear that both parties are mistaken
with respect to the reduction to writing of a prior agreement."  <u>See</u> Restatement (Second) of
Contracts § 155 cmt. b. As this Court held, Dahua failed to prove any prior agreement. <u>See</u> Dkt.
No. 194 at 24 ("In sum, the court finds that there was no prior agreement with Dahua concerning
Zhang's separation of employment from Zhejiang."). Dahua is grasping at straws.

that the plaintiff should not be bound, and it ordered equitable relief in the form of reformation <u>to the prior agreement between the parties</u>, which the plaintiff proved in <u>Torrao</u>.  <u>Id</u>.

Here, we have the opposite.  There was no prior agreement, and Zhang's reliance cannot be unwound (especially where Dahua secured it in bad faith for the necessary period of time).  <u>See</u> Dkt. No. 194 at 24.  Moreover, Fu flew in from China and attended the signing ceremony, with his bilingual lawyer present (electing recklessly by not having the agreement translated though he easily could have).  <u>Id</u>. at 18.  Further, unlike <u>Torrao</u>, Fu signed the contract himself and handed it to Zhang, manifesting his intent to be bound.  <u>Greene v. Ablon</u>, 794 F.3d 133, 147 (1st Cir. 2015).

As a result, Dahua can never satisfy the burden to obtain equitable relief set by the Appeals Court in <u>Torrao</u>, and Restatement (Second) of Contracts § 158 does not grant this Court the power to supplant the payment provision of the severance contract with its own new terms.

In <u>Torrao</u>, the Appeals Court invoked the power of a Massachusetts court under Restatement (Second) of Contracts § 158:  when dealing with a plaintiff who did <u>not</u> bear the risk of mistake, the court ordered a choice of either reformation to the prior proven agreement, or recission (where that deal could be undone because neither party had detrimentally relied).  <u>See</u> <u>Torrao</u>, 26 Mass. App. Ct. at 252.  Critically, the Appeals Court did not rewrite any contract terms.  Dahua has not presented even one case where a Massachusetts court created its own replacement contractual payment provision under the guise of § 158, or crafted any replacement term for that matter.  This Court does not have the authority to do so, as courts have held long since <u>Torrao</u>.  <u>See</u>, <u>e.g.</u>, <u>White v. Fessenden</u>, 358 Fed. Appx. 208, 211 (1st Cir. 2009) (reversal ordered by the First Circuit because "it was beyond the power of the district court to impose its own resolution of material disputed issues that the parties did not agree to").

To be sure, as helpful as the Restatements are, they are not law, and do not supersede it. This Court remains bound by the elements of unilateral and mutual mistake set forth by the First Circuit in <u>Dahua Tech. USA Inc. v. Feng Zhang</u>, 988 F.3d 531 (2021), as well as the controlling precedent on the <u>limitations</u> of a court's power to grant relief where the moving party has unclean hands.  As discussed further below, because Dahua came before this Court with unclean hands, it is ineligible for any equitable relief at all.  <u>See</u> <u>Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.</u>, 324 U.S. 806, 814-15 (1945); <u>Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs</u>, 60 F.3d 867, 880 (1st Cir. 1995) (quoting <u>Keystone Driller Co. v. Gen. Excavator Co.</u>, 290 U.S. 240, 245 (1933)); <u>Ciulla v. Rigny</u>, 89 F.Supp.2d 97, 105 (D. Mass. 2000).

**B.  Dahua secured Zhang's reliance and now seeks an inequitable windfall.**

Zhang honored his obligations under the contract.  Dkt. No. 194 at 25.  In fact, Dahua conceded this point at trial.  <u>Id</u>. ("Here, there is no suggestion that Zhang failed to abide by the contract terms:  he maintained the confidentiality of company information, did not compete, and performed his obligations as requested.").  It would be inequitable to award Dahua for having tried to trick Zhang into signing an agreement which deprived him of the security Dahua and its attorneys knew he was seeking.  <u>See</u> <u>id</u>. at 28.

**C.  Dahua is ineligible for equitable relief because it acted with unclean hands and bad faith – one reason for the Court's allocation of the risk of mistake to Dahua.**

Lastly, Dahua again fails to address the impact of its bad faith on the analysis it now urges the Court to consider.  It is axiomatic that "he who seeks equity must do equity."  <u>K-Mart Corp. v. Oriental Plaza, Inc.</u>, 875 F.2d 907, 910-12 (1st Cir. 1989).  Dahua's unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the

defendant." <u>Precision Instrument Mfg. Co.</u>, 324 U.S. at 814-15; <u>see also</u>, <u>Texaco Puerto Rico, </u>,
60 F.3d at 880 (quoting <u>Keystone Driller Co.</u>, 290 U.S. at 245).

Dahua acted in bad faith and came to court with unclean hands, having used trickery to
secure "Zhang's silence, cooperation, and non-competition under the new contracts" as well as a
release of claims for what would have been a wrongful termination of his prior contract.  <u>See</u>
Dkt. No. 194 at 7, 28, 31; <u>see also</u>, Dkt. No. 197 at 4-12 (Zhang's post-trial brief).  It was
through that haste to swindle Zhang that Dahua earned its allocation of the risk of mistake.[3]  <u>See</u>
Dkt. No. 194 at 31.  As a result, Dahua "must lose" at equity.  <u>See Ciulla</u>, 89 F.Supp.2d at 105
(applying both <u>Texaco Puerto Rico</u> and <u>K-Mart</u>).

**III.   Conclusion.**

Dahua's present motion should be dismissed as untimely.  The ambiguity argument has
been waived, and further makes no sense.  Dahua's present motion further fails on the merits.
The reference to equitable powers to reform contracts to a prior agreement remains inapplicable,
as there was no prior agreement here and Zhang's reliance cannot be undone.  The risk of
mistake allocation was properly borne out of Dahua's haste to swindle Zhang.  Because Dahua
acted in bad faith and with unclean hands, the Court may not stretch to find extraordinary
equitable relief to benefit Dahua.  To the contrary, this Court remains bound by the elements of
unilateral and mutual mistake set forth by the First Circuit in <u>Dahua Tech. USA Inc. v. Feng</u>
<u>Zhang</u>, 988 F.3d 531 (2021).  Dahua failed to meet its burden of proof on all of the elements of
those claims and defenses set forth by the First Circuit.  Thus, the contract must be enforced as
written, as a matter of law.

---

[3] In addition, that is, to Fu's decision to avoid having the agreement translated and to hide
Zhang's compensation numbers from counsel – the "deliberate risk taking" in which he engaged
in his rush to deceive Zhang.  <u>See</u> Dkt. No. 194 at 30.

Respectfully submitted,

FENG ZHANG,

By his counsel,

/s/ Benjamin Flam

_____
Philip J. Gordon (BBO# 630989)
Benjamin Flam (BBO# 671853)
GORDON LAW GROUP, LLP
585 Boylston Street
Boston, MA 02116
Phone: (617) 536-1800
Fax: (617) 536-1802
pgordon@gordonllp.com
Dated:  March 21, 2023          bflam@gordonllp.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a true and accurate copy of the foregoing document upon counsel for Dahua Technology, USA, Inc., by ECF on March 21, 2023.

/s/ Benjamin Flam

_____
Benjamin Flam