UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAHUA TECHNOLOGY USA INC., | * |
| Plaintiff and Counterclaim Defendant, | * |
| v. | * Civil Action No. 1:18-cv-11147-IT |
| FENG ZHANG, | * |
| Defendant and Counterclaim Plaintiff. | * |

MEMORANDUM & ORDER

March 12, 2024

TALWANI, D.J.

Dahua Technology USA Inc. ("Dahua") brought this action against Feng Zhang to reform a severance term in an agreement (the "Release Agreement") terminating Zhang's executive-level position at Dahua's parent company, Zhejiang Dahua Technology Co., Ltd. ("Zhejiang"). Zhang counterclaimed that Dahua's failure to pay him the stated severance amount breached the Release Agreement.

Following remand of Zhang's successful appeal of an order granting summary judgment to Dahua and an eleven-day bench trial, this court issued its Findings of Fact and Conclusions of Law [Doc. No. 194] ("Findings and Conclusions"). The court stated that it would enter judgment against Dahua on its claims for reformation of the Release Agreement and breach of the covenant of good faith and fair dealing. The court reserved judgment, however, as to Zhang's breach of contract counterclaim pending resolution of a final question relating to the appropriate remedy. The court asked for briefing, based on certain of the court's findings, as to whether the court "ha[s] authority to fashion an appropriate remedy as a matter of equity or must enforce the

agreement as written as a matter of law." Id. at 31–32. The court received the requested supplemental briefing, see Supp. Brief of Dahua Regarding the Court's Question as to its Equitable Powers ("Dahua's Supp. Br.") [Doc. No. 196], Zhang's Answer to the Court's Post-Trial Question ("Zhang's Supp. Br.") [Doc. No. 197]; Response of Dahua to Zhang's Answer to the Court's Post-Trial Question ("Dahua's Reply Br.") [Doc. No. 198], Zhang's Reply to Dahua's Supp. Brief ("Zhang's Reply Br."), and held a hearing on this narrow question.

Thereafter, and outside of the court's briefing schedule, Dahua filed a Motion for the Court to Supplement its Conclusions of Law [Doc. No. 205] (the "Motion to Supplement") and Memorandum in Support [Doc. No. 206], which Zhang opposed, Opposition to Dahua's Motion [Doc. No. 207].

For the reasons set below, the court denies Dahua's Motion to Supplement [Doc. No. 205] and concludes that the agreement must be enforced as written. Therefore, the court will enter judgment for Zhang and award damages on his breach of contract counterclaim. See Deft's Answer & Counterclaim 7 [Doc. No. 17].

I. BACKGROUND

The factual findings and legal conclusions concerning the parties' dispute are addressed in detail in the court's Findings and Conclusions [Doc. No. 194] and incorporated herein. The court highlights the following findings that prompted the court's question as to the proper remedy for Zhang's breach of contract claim.

First, Zhang and Dahua entered into a written contract, the Release Agreement. See Find. & Conc. 18, 21–22 [Doc. No. 194].

Second, the Release Agreement provided for the termination of Zhang's 2015 Employment Agreement[1] with Zhejiang and contained the following provision: "[i]n consideration for your execution, non-revocation and compliance with this [Release] Agreement, [Dahua] agrees to make monthly severance payments to you in the amount of $680,000 for sixteen (16) months following the offer termination Date (the 'Severance Period') . . . ." Find. & Conc. 17 [Doc. No. 194].

Third, Zhang and Dahua had no agreement concerning Zhang's separation of employment from Zhejiang or related severance prior to Zhang and Dahua entering into the written Release Agreement. See id. at 22–23. The "sticking points in the negotiations between the parties was . . . the termination of Zhang's employment." Id. at 27.

Fourth, Liquan Fu, Dahua's Director and Zhejiang's Chairman, was mistaken as to the severance term when he executed the Release Agreement on Dahua's behalf without reading it, and Zhang was also mistaken, or, if not mistaken, knew or should have known that Dahua did not intend for the Release Agreement to provide severance payments in the amount of $680,000 per month for sixteen months, when he executed the Release Agreement on his own behalf. See id. at 27–29.

Finally, Dahua bore the risk of such mistake and that the risk was properly allocated to Dahua based on the totality of the circumstances. See id. at 29–31.[2]

---

[1] Capitalized terms not defined herein have the same meaning as in the Findings and Conclusions [Doc. No. 194].

[2] Dahua's characterization of the mistake as a "scrivener's error," see Dahua's Supp. Br. 9 [Doc. No. 196], is not consistent with this court's findings as to how the mistake in the severance term arose. Fu's mistake followed Dahua and Zhejiang's deliberate choices in negotiations: to contract around many of the protections and benefits Zhang had secured in his 2015 Employment

II.  **DISCUSSION**

   A.  **Contract Formation**[3]

As set forth above, the parties entered into a written contract. See Find. & Conc. 18, 21–22 [Doc. No. 194]. Dahua's complaint sought reformation of that contract based on mutual mistake and Dahua never previously contended or presented evidence that the contract was void ab initio. Dahua now contends that no contract was formed because there was a mutual mistake as to the severance amount, and, consequently, there was no meeting of the minds. See Dahua Supp. Br. 4–5 [Doc. No. 196]. Dahua's original position as to contract formation was correct, however, because whether a contract was formed is an objective standard under Massachusetts law.

"Although mutual assent is often misleadingly referred to as a 'meeting of the minds,' the formation of a valid contract under Massachusetts law requires objective, not subjective[,] intent." Greene v. Ablon, 794 F.3d 133, 147 (1st Cir. 2015) (citing Nortek, Inc. v. Liberty Mut. Ins. Co., 65 Mass. App. Ct. 764, 772, 843 N.E. 2d 706 (2006)). "Courts determine that mutual assent, not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do." Salem Laundry Co. v. New England Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280 (1st Cir. 1987). Intent is "what a reasonable man in the position of the

---

Agreement with Zhejiang while leading Zhang to believe those protections would continue; to maintain secrecy even from Dahua's team of attorneys as to Zhang's salary; and to decline to have the final agreement translated into a language Fu could read or understand before signing the agreement. See Find. of Fact & Conc. of Law 4, 12–17, 27 [Doc. No. 194].

[3] Dahua states that it "is not asking the Court to amend or supplement any of the Court's findings of fact, nor is Dahua asking the Court to amend any of its conclusions of law." Mot. to Supplement 1, n.1 [Doc. No. 205]. Dahua nonetheless attempts to relitigate the court's conclusions of law as to contract formation. See Dahua Supp. Br. 4–5 [Doc. No. 196].

4

other party would conclude his objective manifestations to be." Greene, 794 F.3d at 147 (quotations omitted); Klauber v. VMware, Inc., 80 F.4th 1, 9–10 (1st Cir. 2023) (citing Greene in rejecting evidence of subjective intent).

Here, the parties' objective manifestation of their intent was that they entered into a contract by signing the written Release Agreement. As this court has found already, Dahua worked with its counsel to draft the contract, its counsel asked Zhang to review the contract, and its Director and Zhang signed the contract. See Find. & Conc. 15–18 [Doc. No. 194]. Dahua now inappropriately conducts an inquiry into the subjective intent of the parties to inquire if there was a "meeting of the minds," as opposed to what the parties said and did. Salem Laundry Co., 829 F.2d at 280.

The First Circuit's decision in Greene v. Ablon, 794 F.3d 133 (1st Cir. 2015), supports this court's conclusion. In Greene, a doctor sued the hospital that was his former employer and his co-author alleging violations of trademark and copyright infringement pertaining to a book that Greene co-authored while employed by the hospital. See id. at 140–41. The hospital filed a counterclaim alleging inter alia that the doctor had violated the hospital's intellectual property policy, which had been incorporated into numerous employment agreements signed by Greene. See id. at 142. Greene, relying on numerous contract defenses, argued that the hospital's policy did not apply. See id. As relevant here, Greene alleged that "a valid contract was not formed at all because there was no 'meeting of the minds[,]' [s]ince he did not know the IP policy existed." Id. at 147. The Greene court rejected this argument, relying on the objective standard in Massachusetts for contract formation, and concluding that Greene manifested the objective intent to be bound because he signed employment agreements incorporating the intellectual property policy by reference. See id.

Dahua argued at the post-trial hearing that Greene is distinguishable because the dispute here over the Release Agreement involves a material term. That distinction finds no support in Greene, which did not justify its enforcement of the intellectual property policy on the materiality of the term. Dahua also offers case law for the propositions that (1) a binding contract does not follow unless there is agreement as to all material terms, and (2) the severance amount is a material term in a severance agreement. See Dahua's Supp. Br. 5 [Doc. No. 196]. But none of Dahua's offered cases speak to the circumstance here, where there is a written agreement with no missing terms. Accordingly, Dahua's new argument that no contract was formed fails.[4]

### B.     Ambiguity

In its Motion to Supplement [Doc. No. 205], Dahua argues that the court should now find the severance provision of the Release Agreement ambiguous. See Mem. ISO Mot. to Supp. 4–8

---

[4] Whether a contract that has been formed is voidable on the ground that there is no meeting of the mind presents a different question, but one that has previously been addressed by this court. A mutual mistake defense does not support reformation of the contract—as Dahua sought here—but voiding the contract altogether:

> "Where there has been a mistake between the parties as to the subject matter of a contract, there has been no 'meeting of the minds,' and the contract is voidable at the election of the party adversely affected." LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257–58, 496 N.E.2d 827 (1986). Because the result is no contract, rather than a reformed contract, the elements are somewhat different [than for reformation]. No prior oral agreement is needed. Instead, "[t]o assert a mutual mistake defense, a party must show that (1) the contract contained a mistake when it was made; (2) the mistake is shared by both parties; (3) the mistake relates to an essential element of the bargain; and (4) the party raising the defense did not bear the risk of mistake." Dahua Tech., 988 F.3d at 539 (citing LaFleur, 496 N.E.2d at 830–31 and Restatement (Second) of Contracts § 152 (Am. Law Inst. 1981)) (emphasis added).

Find. & Conc. 26 [Doc. No. 194]. As the court previously concluded, Dahua is not entitled to a mutual mistake defense and the resultant voiding of the contract because Dahua bore the risk of the mistake. See id. at 29–31.

[Doc. No. 206]. First, Dahua waived any argument of ambiguity long ago. Dahua did not raise ambiguity in its Answer to Amended Counterclaim [Doc. No. 19] or at any later stage of this proceeding, and expressly disclaimed such an argument as recently as its briefing in connection with this court's post-trial question. In its Reply Brief [Doc. No. 198], Dahua asserted that Zhang's citation to a case involving ambiguous language was not probative as "neither Dahua nor Zhang claim [ambiguity] here." Dahua's Reply Br. 2 [Doc. No. 198]. In light of Dahua's express rejection of ambiguity, any such argument has been waived.

In any event, the severance provision is not ambiguous. The provision reads: "In consideration for your execution, non-revocation and compliance with this [Release] Agreement, [Dahua] agrees to make monthly severance payments to you in the amount of $680,000 for sixteen (16) months following the offer termination Date (the '**Severance Period**') . . . ." Find. & Conc. 17 [Doc. No. 194]. Dahua argues that the language of the settlement provision is unusual and susceptible to at least two interpretations: one providing for sixteen monthly payments, each in the amount of $680,000, and one providing for a total severance amount of $680,000, divided into sixteen monthly payments. See Mem. ISO Mot. 4–6 [Doc. No. 206]. Dahua contends that the former—Zhang's preferred reading—would be the correct interpretation *only if* the provision at issue read "[Dahua] agrees to make monthly severance payments to you in the amount of $680,000 [per month]." Id. at 7.

Dahua's arguments strain the contractual text and are otherwise unpersuasive. "[W]hen the language of a contract is clear, it alone determines the contract's meaning." James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 669, 88 N.E.3d 1133 (2018) (alteration in original). The provision as drafted states that Dahua will make "monthly severance payments to [Zhang] in the amount of $680,000," and that these "monthly severance payments" will be made for the

"**Severance Period**" of "sixteen (16) months." Doc. No. 1-1 at 2 (emphasis in original). Dahua's reading would require the court to ignore the word "monthly" in "monthly severance payments." But courts "interpret a contract so that every word is given effect," DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 804, 985 N.E.2d 1187 (2013), and for that reason alone Dahua's argument fails. Moreover, even if this court were to find the contract ambiguous, that ambiguity would be construed against the drafter—in this case Dahua. See Nadherny v. Roseland Prop. Co., Inc., 390 F.3d 44, 49 (1st Cir. 2004).

Finally, the Restatement (Second) of Contracts does not lead to a different result. Dahua points to Section 155 of the Restatement for the proposition that "[i]n a borderline case a court may avoid the necessity of reforming the writing by viewing the issue as one of interpretation." Restatement (Second) of Contracts § 155 cmt. b (1981) (quoted in Mem. ISO Mot. to Supp. 4 [Doc. No. 206]). First, this is not a borderline case as the severance provision has a plain and unambiguous meaning. Second, comment b of Section 155 refers to situations where "both parties are mistaken with respect to *the reduction to writing of a prior agreement*," id. (emphasis added), whereas this court has already found that "there was no prior agreement" between the parties concerning Zhang's separation of employment from Zhejiang, see Find. & Conc. 24 [Doc. No. 194].

Given the lack of any contractual remedies, the court now considers whether there are any equitable theories to justify relief in favor of Dahua.

### C. Unjust Enrichment

In its post-trial brief, Dahua argues that Zhang's receipt of $10.2 million under the Release Agreement beyond what Dahua "intended to offer him" would be "quintessential unjust enrichment." See Dahua's Supp. Br. 10–11 [Doc. No. 196] (citing Fernandes v. Havkin, 731 F.

8

Supp. 2d 103, 114 (D. Mass. 2010)). Dahua urges the court to use its equitable powers to impose a quasi-contract where Zhang conferred benefits to Dahua and Dahua has already compensated Zhang for such benefits—and the court need only determine whether this compensation was appropriate. See id. at 6–7.

However, "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment." Platten v. HG Bermuda Exempted Ltd., 437 F. 3d 118, 130 (1st Cir. 2006). Dahua's cited cases do not hold otherwise. In Fernandes v. Havkin, 731 F. Supp. 2d 103 (D. Mass. 2010), the court denied the unjust enrichment claim after finding it "unnecessary to determine the relative degree of enrichment and detriment between plaintiff and defendant" because there was a "fully integrated and express contract" between the parties. Id. at 115. In Corcoran Mgmt. Co. v. Town of Framingham, 2003 WL 21960676 (Mass. Super. July 3, 2003), the court considered a claim of unjust enrichment due to the *absence* of an express contract. See id. at *8–9.

Accordingly, the court finds a claim of unjust enrichment is unavailable here because there is a valid and enforceable contract between the parties.

### D.     The Court's Inherent Equitable Powers

Finally, this court's inherent equitable powers do not support rewriting the contract or otherwise granting Dahua relief. Under Massachusetts law, "a written agreement made from an arm's-length deal can't be undone just because one party later claims she thought the deal was something other than what the signed contract reduced to ink." Guldseth v. Fam. Med. Assocs. LLC, 45 F.4th 526, 539 (1st Cir. 2022). Even when faced with indefinite contracts, "[t]he court may not rewrite the language of a claim to make sense of it." Am. Med. Sys., Inc. v. Biolitec, Inc., 666 F. Supp. 2d 216, 223–24 (D. Mass. 2019). Here, Dahua is a sophisticated business

entity that entered into an arm's length deal; its Director signed a contract that the company's counsel had drafted; and it now asks the court to set the contract aside and impose the court's vision of an equitable term. But courts "*should not* attempt to 'accomplish by judicial fiat what [a party] neglected to achieve contractually.'" Gen. Hosp. Corp. v. Esoterix Genetic Labs., LLC, 16 F.4th 304, 313 (1st Cir. 2021) (emphasis added) (citation omitted)).

      Dahua contends that the court has "inherent flexibility" and "substantial equitable powers" to prevent the allegedly unjust result of an extra $10.2 million in compensation being awarded to Zhang. Dahua Supp. Br. 9 [Doc. No. 196]. However, in none of the cases that Dahua cites did a court exercise equitable powers to override an express and unambiguous contract so that it could impose a remedy when the pleading party was not entitled to reformation or rescission. For instance, Dahua quotes Demoulas v. Demoulas, 428 Mass. 555, 703 N.E.2d 1149 (1998), for the proposition that "equitable remedies are flexible tools to be applied with a focus on fairness and justice." Dahua's Supp. Br. 9 (quoting Demoulas, 428 Mass. at 580). But the Demoulas court also listed circumstances where such relief would be appropriate: "a violation of fiduciary duty and fraud." Demoulas, 428 Mass. at 581–82 (quotations omitted). Zhang did not violate any fiduciary duty that he owed to Dahua and Dahua does not allege or show that he committed any fraud. Dahua also cites PHL Variable Insurance Company v. The P. Bowie 2008 Irrevocable Trust, 718 F.3d 1 (1st Cir. 2013), but in that case, the court imposed an equitable award of special damages under Rhode Island law only after concluding that *the plaintiff* did not

entity that entered into an arm's length deal; its Director signed a contract that the company's counsel had drafted; and it now asks the court to set the contract aside and impose the court's vision of an equitable term. But courts "*should not* attempt to 'accomplish by judicial fiat what [a party] neglected to achieve contractually.'" Gen. Hosp. Corp. v. Esoterix Genetic Labs., LLC, 16 F.4th 304, 313 (1st Cir. 2021) (emphasis added) (citation omitted)).

    Dahua contends that the court has "inherent flexibility" and "substantial equitable powers" to prevent the allegedly unjust result of an extra $10.2 million in compensation being awarded to Zhang. Dahua Supp. Br. 9 [Doc. No. 196]. However, in none of the cases that Dahua cites did a court exercise equitable powers to override an express and unambiguous contract so that it could impose a remedy when the pleading party was not entitled to reformation or rescission. For instance, Dahua quotes Demoulas v. Demoulas, 428 Mass. 555, 703 N.E.2d 1149 (1998), for the proposition that "equitable remedies are flexible tools to be applied with a focus on fairness and justice." Dahua's Supp. Br. 9 (quoting Demoulas, 428 Mass. at 580). But the Demoulas court also listed circumstances where such relief would be appropriate: "a violation of fiduciary duty and fraud." Demoulas, 428 Mass. at 581–82 (quotations omitted). Zhang did not violate any fiduciary duty that he owed to Dahua and Dahua does not allege or show that he committed any fraud. Dahua also cites PHL Variable Insurance Company v. The P. Bowie 2008 Irrevocable Trust, 718 F.3d 1 (1st Cir. 2013), but in that case, the court imposed an equitable award of special damages under Rhode Island law only after concluding that *the plaintiff* did not

have an adequate remedy at law, id. at 11. In contrast, Dahua, the counterclaim *defendant*, is seeking to limit Zhang's remedy at law.[5]

There are no special circumstances here that justify the court fashioning equitable relief to reform an express contract. Dahua points to Borden v. Paul Revere Life Insurance Company, 935 F.2d 370 (1st Cir. 1990), where the First Circuit affirmed a district court's exercise of equitable powers to rescind an express insurance policy contract. See id. at 377. However, Borden involved claims of material misrepresentation, and the district court turned to equity in that context. See id. at 376–77. Dahua does not allege—and it cannot—that Zhang made any misrepresentations in negotiations over the Release Agreement. In Kansas v. Nebraska, 574 U.S. 445 (2015), the Supreme Court recognized a court's flexibility to craft equitable remedies, id. at 472, but its holding was limited to circumstances where the Supreme Court has original jurisdiction (disputes between two states) and the Kansas Court expressly stated that its role in such disputes "significantly differs from the one the Court undertakes in suits between private parties," id. at 453—which is what this court faces.

Finally, Dahua has not persuaded the court that an exercise of discretion under Section 158 of the Restatement (Second) of Contracts is appropriate here. Section 158 states:

> In any case governed by the rules stated in this Chapter [6 Mistake], if those rules together with the rules stated in Chapter 16 [Remedies] will not avoid injustice, the court may grant relief on such terms as justice requires including protection of the parties' reliance interests.

Restatement (Second) of Contracts § 158(2). Dahua has not demonstrated that payment of nearly $11 million would be an injustice sufficient to invoke this Restatement provision and has not

---

[5] Holmberg v. Ambrecht, 327 U.S. 392 (1946), involved a suit *in equity* over certain land rights, far removed from the breach of contract dispute before the court. See id. at 393.

suggested any remedy that would avoid injustice to Zhang and protect his reliance interests. As this court has already found, Zhejiang needed to prevent Zhang from revealing "significant" and serious product-related security issues until they were resolved, and until the company completed an acquisition. See Find. & Conc. 6, 13 n.8 [Doc. No. 194]. The Release Agreement Dahua obtained for Zhejiang prohibited Zhang from competing with the company, disparaging the company, disclosing confidential information, or making any claims based on his 2015 Employment Agreement—and required him to comply with the Release Agreement in order to receive any Severance Payments. See id. at 16–17. Zhang complied with the terms of the Release Agreement and provided the benefit of the non-compete, non-disparagement, and other contractual terms to Dahua and Zhejiang. See id. at 31.

   Much like a party seeking restitution bears the burden of showing the "injustice of the [other party's] enrichment" and its entitlement to said restitution, Metro. Life Ins. Co. v. Cotter, 464 Mass. 623, 644, 984 N.E.2d 835 (2013), where Dahua seeks relief on grounds of injustice, it bears the burden of showing the injustice of Zhang's enrichment and its entitlement to restitution. Dahua merely argues that Zhang could not have reasonably expected to receive nearly $11 million in severance payments, Dahua's Supp. Br. 11 [Doc. No. 196], but ignores the evidence that both Dahua and Zhejiang received the benefit of Zhang's performance of his obligations under the contract, and the absence of evidence that those benefits were not of substantial value to Dahua and Zhejiang.

   The court thus rejects Dahua's proposal to reduce Zhang's payments for performance *after* he has already finished performance. Instead, the enforcement of the Severance Provision as written does not constitute injustice such that the court should craft an equitable remedy overriding the contract. See Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71, 80 (D. Mass.

2004) ("The law strongly favors certainty and precision of contracts, even at the expense of occasional injustice, on the theory that a contrary rule would lead to even greater injustices.").

The Massachusetts Court of Appeals' decision in Torrao v. Cox, 26 Mass. App. Ct 247, 525 N.E.2d 1349 (1988), relying on this Restatement provision is inapt because Torrao is materially different from the facts here. In Torrao, the Appeals Court considered a seller's claim for reformation of a deed after the seller discovered that the final deed as negotiated by his counsel conveyed to the buyers more land than he had intended—or authorized his counsel to convey. See id. at 249–52. The Appeals Court invoked the Restatement in holding that the seller could not be bound to modifications he had not assented to, and ordered equitable relief, allowing the buyers to elect either to reformation of the deed or rescission of the purchase agreement. See id. at 252. Here, there was no agency problem as Dahua's Director signed the agreement (and declined to review it), and Dahua as the agreement's drafter bore the risk of mistake. More importantly, the Torrao court had the option of allowing rescission of the contract, which is not available here, where Dahua and Zhejiang have received the full benefit of Zhang's performance of the contract.

Accordingly, Dahua has not offered any authority from which the court may fashion an equitable remedy to override express contract terms here.

### III.   CONCLUSION

For the foregoing reasons, Dahua's Motion to Supplement the Court's Findings of Fact and Conclusions of Law [Doc. No. 205] is DENIED.

The court further finds that, where it is without the equitable authority to reform the parties' Release Agreement, the terms of the Release Agreement control, including the severance

provision in its entirety. Accordingly, the court enters judgment in Zhang's favor as to his breach of contract counterclaim.

      IT IS SO ORDERED.

March 12, 2024                                       /s/ Indira Talwani
                                                      United States District Judge